C. W. HUBBARD ET AL. v. L. M. ALLEN.

ERROR TO THE COURT OF COMMON PLEAS NO. 2 OF ALLE-
GHENY COUNTY.

Argued October 23, 1888—Decided January 7, 1889.

1. The courts of the state have exclusive jurisdiction to enforce a contract to pay royalties for the use of a patented invention, when the parties are both residents of the state.

2. Where the specifications of claim in letters patent for an improved method or process cover the use in such method of several distinct mechanical appliances, the licensee or assignee of the patent is liable for the stipulated royalty though he use but one of the appliances, unless his liability is clearly and distinctly limited.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK, WILLIAMS and HAND, JJ.

No. 71 October Term 1888, Sup. Ct.; court below, No. 645 July Term 1887, C. P. No. 2.

To the first Monday of July, 1887, a summons in assumpsit was issued in an action by L. M. Allen, administrator d. b. n. of George Palmer, deceased, against Charles W. Hubbard, D. M. Long, Charles Lockhart and Thomas Bakewell, surviving partners of the firm of Hubbard, Lippincott, Bakewell & Co., to recover royalties accruing under an agreement relating to the assignment of a patented improvement in the methods of manufacturing axes. Issue.

At the trial on February 7, 1888, it appeared that on August 22, 1871, letters patent No. 118,264 had issued to George Palmer and Charles W. Hubbard, of Pittsburgh, Pa. for an "Improvement in the methods of manufacturing axes." The mechanical appliances which made up the method protected by the letters patent were a series of dies employed in swaging, welding and finishing the form of the axe. A piece of rolled metal of the proper width and length was doubled on itself at a welding heat. Within the fold a mandrel was inserted to form the eye and the mass placed in the cavity of the lower

one of a pair of dies, made stationary. The upper one, an exact counterpart, is fastened to a drop-hammer which by its blows is intended to swage the metal to the full of the cavity of the proper shape, and to weld the inner faces of the fold. The pair of dies which did the first rough-shaping and welding was marked a a on the specifications. The steel was then welded upon the poll in the usual way, and the axe afterward put through a second set of dies called d d, and then completed ready for polishing and finishing in a third set of dies marked g g. The specifications describing in exact detail the different movements from the beginning to the end in the manufacture of the axe, concluded:

"What we claim as our invention, and desire to secure by letters patent, is,

"1. The method, herein described and represented, of manufacturing axes and hatchets.

"2. The pair of dies a a, for roughly swaging and welding the poll of the axe or hatchet, substantially as described.

"3. The swaging dies d d, having swaging-faces of suitable form for shaping, by a percussive blow, the ends of an axe, in combination with a pair of eye-pins, e, constructed substantially as described.

"4. The series of dies a a, d d, and g g, of a construction substantially as described."

On September 2, 1871, Mr. Palmer and Mr. W. Hubbard assigned their entire interest in said letters patent to the firm of Hubbard, Lippincott, Bakewell & Co., of which firm said Charles W. Hubbard was a member; and, the same day, George Palmer, individually, executed a written agreement with the firm reciting said assignment and providing that in consideration of said assignment and of the sum of one dollar, the firm covenanted with said Palmer, "that they will keep a true and correct account of all axes and hatchets manufactured by them by the process described and claimed in said letters patent, and shall, on the first day of July and January, in each and every year, during the term of said letters patent, after the first day of January, 1872, render unto said party of the first part, a true and correct statement of the number of axes and hatchets so as aforesaid manufactured by them by the process aforesaid, and at the same time shall pay unto the said

party of the first part, the sum of one cent, as royalty, on every axe and hatchet so as aforesaid manufactured by them since the last preceding statement and payment was made."

Upon this contract the declaration was drawn.

The plaintiff offered to prove that for and during a period of six years immediately prior to January 1, 1887, the defendants had made use of the dies described in letters patent No. 118,264, and claimed in the second claim thereof, at their works in the city of Pittsburgh, for the purpose of roughly swaging and welding the polls of axes, substantially as described in said patent.

Defendants object: (1) Because the question raised by plaintiff's offer necessarily involves a definition and construction of the patent, and is a question arising under the patent laws, whereof the United States courts have exclusive jurisdiction. (2) Because the offer does not support or maintain the declaration in this, that the declaration and contract call for the use of the entire process, but the offer is to show the use of a part only of said process.

By the court: Objections overruled.[13]

The plaintiff's case in chief having closed, the defendants, after other testimony, called Charles W. Hubbard, a member of defendant firm and one of the patentees in said letters, and proposed to prove, in substance, that the particular device described and claimed in the second claim of the patent was the invention of the witness.

Objected to as incompetent and irrelevant.

By the court: Offer refused.[11]

Frank Reese, called by defendants, testified that he was an attorney at law and a mechanical and metallurgical expert, and had frequently been called upon during the last twelve years to testify in patent and other causes:

Defendants offered to prove, in substance, that under the principles of the patent laws of the United States, the use of one device of a series of several devices patented as a process, would not be the use of said process.

Objected to as irrelevant; the question is upon the construction of a contract, not of a patent.

By the court: Under the decision in Palmer's App., 96 Pa. 106, offer refused.[12]

Charge of Court below.

The disputed questions of fact arising upon the evidence were, (1) whether or not the defendants used more than one of the series of dies, that designated in the second paragraph of the claim; (2) whether such use of said dies was merely for the purpose of shaping the polls, the welding of the blank being made before by a trip-hammer, or whether the dies were used both for the welding and shaping.

The court, WHITE, P. J., charged the jury and answered the points presented as follows:

During the progress of this trial quite a number of very interesting questions of law have been raised, that will be for the court and not for the jury. Some I will have to pass upon by way of instructions to you but most of them I think have been settled, so far as you are concerned, in the trial of this case now, by the decision of the Supreme Court in Palmer's Appeal, which was a case involving this contract, and of course involving the patent, because it was by the representative of Mr. Palmer against the defendants then using the device. . . . . There is however a question of fact for you to pass upon. Counsel on both sides have agreed to the amount of verdict that should be found, if you should find for the plaintiff, so that [you really have but one question of fact to pass upon and I need not take up our time in going over the evidence, or elaborating the case, to bring you to that one question, which is, whether the dies were used for the purpose of welding these polls as well as shaping them. As I understand the decision of the Supreme Court, it is that where the dies were used for the purpose of shaping the poll of the axe alone, the defendants are not liable; but, where it has been used for welding as well as shaping, then the defendants are liable, and that is the question of fact now for you, whether these dies were used for welding the polls for these axes as well as shaping. I say to you in general terms, before I answer the points of law presented by the defendants' counsel, that if the welding was regularly and substantially done under the little hammer the plaintiff cannot recover. An occasional welding under the drop when the little hammer was out of order, or a little incidental welding under the drop, would not be sufficient to make the·defendants liable under this contract. But if the drop and

dies were used for welding as well as shaping the polls, the defendants are liable.] [10]

The defendants' counsel request the court to charge the jury:

[The questions presented are sufficiently raised by the eleventh and fourteenth points.]

11. That a process is a mode of treatment of certain materials to produce a given result, consisting of a series of acts performed upon the subject-matter, which is to be thereby transformed or reduced to a different state or into a different thing.

That a patentable process, as applied to mechanical operations to produce an article of manufacture, consists of a series of steps or operations, and is an entirety, and is not used or employed unless the entire process is employed.

That in the patent, on the second claim of which this action is based, the use of the dies, *a a*, without the use of the entire series of dies mentioned in the fourth claim, is but a use of the process covered by the patent.

That in view of the statements and disclaimers contained in the Palmer and Hubbard patent, the second claim thereof is not used, unless the dies, *a a*, are used to weld together the inner faces of the axe polls without the use of other instrumentality to weld the poll.

That if the jury believe that the defendants in the manufacture of axes weld together the faces of the bent blanks to form axe polls, by means of a trip-hammer, before subjecting them to the action of dies, such as described in said second claim, and that such previous welding was not resorted to as a device to avoid the use of that claim, but was necessary in order to secure a good weld and to make a sound axe, then such use of the dies, *a a*, is not a use of the second claim within the meaning of the patent.

That the contract entered into between the plaintiff's intestate and the defendants, is for the manufacture of finished and salable axes, by the process described and claimed in the Palmer-Hubbard patent.

Answer: Covered by the decision of the Supreme Court in Palmer's App., 96 Pa. 106, and for that reason refused.[5]

14. That the controversy in this action requires a judicial construction of the scope and effect of the letters patent No.

118,264, granted on August 22, 1871, to George Palmer and Charles W. Hubbard; and especially renders it necessary for the court to determine whether the grant under said letters patent is for a process or method, in such a sense that the use of one of the mechanical devices described therein would or would not constitute a use of such process or method within the meaning of said letters patent, and of the contract sued on, which said letters patent were in the words and figures following, to wit: . . . . . and which contract was in the words following, to wit: . . . . . And also to determine whether the use of the drop and dies, *a a*, for the purpose of shaping the poll and of further welding the poll after it had been welded under the trip or "little hammer" constitutes a use of the second claim of said letters patent within the true meaning of said letters patent and of the contract in suit. That the determination and decision of said questions are vested by the constitution and laws of the United States solely in the courts of the United States, and that therefore this court should nonsuit the plaintiff, or direct the jury to find a verdict for the defendants, on the ground that this court has no jurisdiction to decide said questions in controversy.

Answer: Refused.[9]

The jury found for the plaintiff in the sum of $16,750.80. Judgment having been entered, the defendants took this writ and assigned as error:

5, 9. The answers to defendants' points.[5] [9]

10   The part of the charge embraced in[ ][10]

11, 12. The refusal of the defendants' offers.[11] [12]

13. The admission of plaintiff's offer.[13]

*Mr. William Bakewell* and *Mr. George Shiras, Jr.*, for the plaintiffs in error:

1. Much discussion and some difference of opinion have arisen under §§ 629 and 711 of the Rev. St. of the U. S. giving original and exclusive jurisdiction of all suits at law or in equity, arising under the patent and copyright laws, to the circuit courts of the United States; but we submit that under the law as established by the decisions, when the controversy involves, not merely the construction of a contract, but neces-

sarily requires an examination and construction of the patent laws of the United States, the jurisdiction of the federal courts is exclusive : Dale Tile Mfg. Co. v. Hyatt, 125 U. S. 46. The application of the principle to the case in hand is very ready. The court below could not instruct the jury without determining the question, whether the use of one of several devices constituting a claim for a process, was or was not an infringement or use of the process. To determine that question required the court to construe and apply, not common law principles, but the doctrines and effect of the patent law of the United States.

2. Every patent must be construed according to the language of its claims. It is these which determine the nature and extent of the privilege granted by the patent; and the specifications can be consulted only for the purpose of illustrating the claims, not for the purpose of enlarging the scope of the invention therein stated : Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274; Railroad Co. v. Mellon, 104 U. S. 118; White v. Dunbar, 119 U. S. 51. The only process claimed by the patentees, and therefore the only process covered by the terms, process described and claimed, used in the agreement, is that embodied in paragraph 1 of the claim. The other claims do not relate to processes at all, and it is well settled that where a patent contains a number of items of claim, as in this case, each claim is in effect a separate and distinct patent, and must be separately construed : Merrill v. Yeomans, 94 U. S. 568; Cochrane v. Deener, 95 U. S. 355. In such case the claim must be construed to be co-extensive with the description and refer to the whole thereof, so that it must be taken as being for a process including in combination, not any one step, but all the steps named in the specification : Evans v. Kelley, 13 Fed. R. 903; Dobson v. Dornan, 118 U. S. 11; Dobson v. Bigelow, 114 U. S. 439; Hammerschlag v. Garrett, 10 Fed. R. 479; Voss v. Fisher, 113 U. S. 213 ; Blake v. San Francisco, 113 U. S. 680; Cotter v. Copper Co., 13 Fed R. 237; Wier v. Morden, 125 U. S. 98; Sargent v. Hall S. & L. Co., 114 U. S. 63; Snow v. Railway Co., 121 U. S. 617; Campbell v. Cavenaugh, 11 Fed. R. 87.

3. If, however, it should be held that the defendants have used the second claim, and that the contract was made in con-

templation of all claims, the plaintiff is in no better position. We therefore contend on the hypothesis that they have not used claims 1, 3 and 4, and that the contract relates to four claims, only one of which was used, that the plaintiff cannot recover the same amount as if all the claims had been employed: Proctor v. Brill, 4 Fed. R. 415; Wooster v. Simonson, 16 Fed. R. 680; Willimantic Thread Co. v. Clark, 27 Fed. R. 866; Westcott v. Rude, 17 Fed. R. 834. It is not an answer to this position to assert that the contract is entire and indivisible, because in such view it would follow clearly that the contract being for the payment of a fee for the use of a patent as an entirety, unless the patent were so used as an entirety, no liability would arise at all: Nye v. Raymond, 16 Ill. 153; Emery v. Cavenaugh, 27 Fed. R. 512.

*Mr. D. F. Patterson* (with him *Mr. L. M. Allen* and *Mr. John M. Goehring*), for the defendant in error:

1. The federal courts have uniformly ruled that an action on a contract to recover royalties due for the use of a patented invention, if the parties are residents of the same state, is within the exclusive jurisdiction of the state courts. One of the very first steps in making out a case of that character is proof that the defendant had made use of the patented invention for which the contract bound him to pay royalty; and it would be preposterous to hold that the state court must arrest the proceeding whenever the defendant raises a question about his use of the patented device. Such question may involve a construction of the patent, in so far as it may be necessary to determine its scope; but it is competent for the state court to determine the scope, as well as the validity, of a patent when it becomes necessary for the adjudication of a cause that is properly before it: Slemmer's App., 58 Pa. 155. The first case before the Supreme Court of the United States was Wilson v. Sandford, 10 How. 99, and the very point made by the defendants is directly ruled against them in Albright v. Teas, 106 U. S. 613, and in Felix v. Schwarnweber, 125 U. S. 54.

2. We deny that there is any patentable process described and claimed in the patent, as distinguishable from the mechanical devices therein described and claimed. The patentee of a process is required to describe one or more instrumentalities

by means of which it can be practiced, but he is not confined
to the instrumentalities so described, and his patent is infring-
ed by any one who uses his process without license, although
such use be effected by mechanism totally different from that
described in the patent: Tilghman v. Proctor, 102 U. S. 707,
728; Corning v. Burden, 15 How. 252. The word, process,
as used in the contract in suit, was not employed and under-
stood by the parties in its patent law sense, and it could not
have been so used, because the patent does not describe and
cover a process as distinct and distinguishable from the me-
chanical devices, or sets of dies, described and claimed as the
invention of the patentees: Palmer's App., 96 Pa. 106.

3. The assignments of error relating to the refusal of de-
fendants' offers of evidence, are not assigned in conformity
with the rules of this court. But even if it were competent
to contradict the patent record by proof that Hubbard and
Palmer were the respective sole inventors of different parts of
the invention, the contract, nevertheless, binds the assignees
to pay royalties for the use of the invention. Moreover, the
opinion of an expert witness that, under the principles of the
patent laws, the use of one device of a series of several devices
patented as a process, would not be the use of said process, is
not admissible for any such purpose: Winans v. Railroad,
21 How. 88 ; Corning v. Burden, 15 How. 252.

OPINION, MR. JUSTICE STERRETT :

This suit, against the survivors of Hubbard, Lippincott,
Bakewell & Co., was brought to recover royalties alleged to
have accrued under their agreement with George Palmer of
September 2, 1871. The origin and substance of that agree-
ment are as follows : On August 22, 1871, letters patent of
the United States were issued to Charles W. Hubbard, of the
firm defendants below, and George Palmer, plaintiff's intestate,
" for a new and useful improvement in the manufacture of
axes." On September 2d following, the patentees assigned
their interest in the patent to the firm, and on the same day,
and as part of same transaction, the agreement in suit was
executed. After reciting the issuance of the letters patent to
Hubbard and Palmer " for an improvement in the method of
manufacturing axes," and the assignment by them to the firm,

the agreement provides that, in consideration of the assign-
ment, etc., the firm " will keep a true and correct account of
all axes and hatchets manufactured by them by the process
described and claimed in said letters patent, and shall, on the
first day of July and January in each and every year, during
the term of said letters, . . . . render unto said party of the
first part (Palmer) a true and correct statement of the num-
ber of axes and hatchets so as aforesaid manufactured by them
by the process aforesaid, and at the same time shall pay unto
the said party of the first part the sum of one cent, as roy-
alty, on every axe and hatchet so as aforesaid manufactured
by them since the last preceding statement and payment."

Doubtless the purpose of the firm in procuring the assign-
ment was to secure to themselves a monopoly of the patent.
Hubbard, being one of the patentees and a member of the firm,
had a right, of course, to use the patent in the partnership
business of manufacturing axes, etc., but Palmer also, as co-
patentee, had a like right to use it or license others to do so.
Hence it was necessary for the firm to procure the assignment
in order that they might enjoy a monopoly in the use and con-
trol of the patent. But, it matters little what their purpose
was. Palmer disposed of a valuable right, and the only con-
sideration he received or was to receive therefor was the
royalty which the firm agreed to pay. They refused to pay
anything, and several years after the agreement was executed,
a bill was filed by the personal representative of Palmer, pray-
ing for an account, etc. That suit was so proceeded in, that
in November, 1880, it was finally decreed by this court that the
firm of Hubbard, Lippincott, Bakewell & Co. pay to said
personal representative $5,432.45, arrears of royalty accrued
before the bill was filed: Palmer's App., 96 Pa. 106. That
case involved substantially the same general questions that
are presented in this contention.

The claim, in the case at bar, is for royalties accrued after
former suit was commenced. As to a considerable portion
thereof the statute of limitations was successfully interposed.
The residue of the claim was resisted mainly on two grounds:
1st. Want of jurisdiction in the state courts, in that the cause
of action arises under the patent laws of the United States,
and is therefore originally cognizable in the Circuit Court

thereof. 2d. That under a proper construction of the agreement no royalties ever accrued. It was agreed, however, that if the plaintiff was entitled to a verdict, the amount thereof should be $16,750.80.

The question of jurisdiction in like cases has been frequently before the United States courts, and, as we understand the decisions, those courts have uniformly declined to assume jurisdiction of suits between residents of same state, founded on contracts relating to the use of patents. In Hartell v. Tilghman, 99 U. S. 547, the earlier cases were reviewed by Mr. Justice MILLER. One of these, Wilson v. Sandford, 10 How. 99, was a suit for infringement, brought by the assignee of a patent against a party who had taken a license from the owner and failed to pay the consideration. The court said: "The peculiar privilege given to this class of cases was intended to secure uniformity of decision in the construction of the acts of congress in relation to patents. The dispute in this case does not arise under any act of congress, nor does the decision depend on the construction of any law in relation to patents. It arises out of the contract stated in the bill, and there is no act of congress providing for or regulating contracts of this kind. The rights of the parties depend altogether upon common law and equity principles."

In a later case, Albright v. Teas, 106 U. S. 613, between citizens of the same state, brought in a court thereof for moneys alleged to be due to the complainant under a contract whereby certain letters patent, granted to him, were transferred to the defendants, it was held that the suit, not involving the validity or the construction of the patent, is not one arising under a law of the United States, and cannot be removed to the Circuit Court. " It is clear," said Mr. Justice WOODS, " from an inspection of the bill and answers, that the case is founded upon the agreement in writing between the appellee and the appellants, Albright and Cahoone, by which the former, for the consideration therein specified, transferred to the latter his interest in certain letters patent. The suit was brought to recover the consideration for the transfer and was not based on the letters patent. . . . . . The only question raised by the bill and answer was simply this : What is the sum due the appellee from Albright and Cahoone, for his

royalties under the contract? In ascertaining this amount, it, of course, became necessary to inquire what goods were manufactured by the appellants under the patent of the appellees. In prosecuting this inquiry an incidental question might arise, namely, What goods were manufactured by appellants under other patents of which they were the owners or licensees? But this incidental and collateral inquiry does not change the nature of the litigation. The fact that Albright and Cahoone had licenses to use the other patents under which they were manufacturing goods, does not give them the right to litigate their cause in the United States courts, because certain goods which they asserted were made under the other patents, the appellee asserted were really made under his. The suit, notwithstanding the collateral inquiry, still remains a suit on the contract to recover royalties, and not a suit upon the letters patent. It arises solely upon the contract and not upon the patent laws of the United States. We are therefore of opinion that, even if we go outside of the pleadings and look into the testimony, the case is not one arising under the laws of the United States, and consequently the courts of the United States had no jurisdiction."

Other cases might be cited, showing the United States courts have uniformly held that an action between residents of same state, on a contract to pay royalties for the use of a patented invention, is within the exclusive jurisdiction of the state courts, but those referred to, at some length, are sufficient.

In Slemmer's App., 58 Pa. 155, the question was considered by this court. After referring to the cases, Mr. Justice SHARSWOOD there said: " The result of the authorities then appears to be that the state courts are competent, either at law or in equity, to enforce a contract or a trust of which a patent right is the subject matter, where the validity of the patent is not directly in question, and even to pass upon that when it arises ex necessitate, as by way of defence in an action on a contract."

Dale Tile Manufacturing Company v. Hyatt, 125 U. S. 46, cited by plaintiffs in error, is not in conflict, but rather in harmony with the cases above referred to, and also with Felix v. Schwarnweber, the next case in same volume.

Without further consideration of the question, we are satis-

fied the court below had jurisdiction of the case. The suit is on the contract to account and pay a stipulated royalty. There is no question as to the validity of the patent or the right of plaintiffs in error to its exclusive use. The only question is that involved in the second ground of defence, viz. : On a proper construction of the agreement, are the defendants indebted for royalties, and, if so, how much ?

The agreement, as we have seen, is to keep and render every six months " a true and correct account of all axes and hatchets manufactured by them by the process described and claimed in said letters patent," and pay, as royalty, " one cent on every axe and hatchet," etc.

The extent of liability, if liable at all, being admitted, the only question of fact submitted to the jury was, whether certain dies were used for the purpose of welding as well as shaping the polls of the axes and hatchets. In submitting that question the learned judge, following our ruling in the former case, instructed the jury that if the dies were used only for the purpose of shaping the poll of the axes, defendants were not liable ; but if they were used for welding as well as shaping, then defendants were liable. The verdict was thus made to depend solely on the determination of that question of fact, and it was found in favor of plaintiff below, thus determining the fact that the dies in question were used by defendants for both shaping and welding.

The contention is that this was not manufacturing "by the process described and claimed in said letters patent;" that it was using only one step in that process, and cannot, according to the true intent and meaning of the contract, be regarded as manufacturing by the process. In other words, there can be no manufacturing "by the process" unless each and every step in the process is employed. We do not think so. As was said in the former case, defendants below might not find it convenient or advantageous to use all the mechanical devices covered by the patent; but, according to what must be regarded as the true interpretation of the contract, the employment of one or more of them was a manufacturing "by the process described and claimed in the letters patent." The word "process," as used in the agreement in suit, was not employed in the restricted technical meaning that it has

acquired in the patent law when used in speaking of patented processes, etc. As distinguishable from the mechanical devices described and claimed in the letters patent, there is no patentable process described therein. The patentees themselves did not represent that they had invented any new process which, in and of itself, was the subject matter of a patent; but that they had "invented a new and useful improvement in the manufacture of axes," and, proceeding to explain the "construction" thereof, they describe three distinct sets of dies by referring to the drawings attached to the specifications. It thus appears from the claim and specifications that the invention covered by the letters patent relates not to a patentable "process," but solely to mechanical devices. The invention consists wholly in the mechanical devices embodied in the dies. Each separate set of dies is a patented invention, so far at least that the unlicensed use thereof would undoubtedly subject the party using the same to an action for infringement of the patent. The plaintiffs in error themselves would doubtless so regard it, if any one should attempt to use the pair of dies which constitute the second item of claim covered by the patent of which they are the assignees. Nothing is better settled in practice than that the unlicensed use of either of several mechanical devices embraced in the claim of a patented invention, is an infringement of the patent; and it ought to be regarded as equally clear that a licensee or assignee of a patent containing several distinct items of claim, is liable for the stipulated royalty, if he use the invention covered by any one of those items, unless his liability is clearly and distinctly limited.

The jury having found that plaintiffs in error used the set of dies above referred to for the purpose of both welding and shaping axe polls, we are of opinion that, upon any proper construction of the contract in suit, plaintiff below was entitled to recover for so much of his claim for royalties as was not barred by the statute of limitations.

It is unnecessary to refer specially to either of the assignments of error. Sufficient has already been said to show that there was no error in the answers of the court to defendants' 5th, 6th, 7th, 8th, 11th, 12th, 13th, and 14th points, recited in the first nine specifications.

Statement of Facts.

The 10th specification, embracing part of the charge in which reference is made to the question of fact submitted to the jury, etc., is not sustained.

There was no error in rejecting defendants' offers of evidence referred to in the 11th and 12th specifications, nor in admitting the evidence complained of in the 13th and last specification.

Judgment affirmed.

Argued October 23, 1888—Decided January 7, 1889.