[No. 29793. *En Banc.* July 11, 1946.]

ED. THYS *et al., Appellants,* v. WILFRED E. RIVARD *et al., Respondents.*[1]

[1]Reported in 171 P. (2d) 255.

*Cheney, Hutcheson & Gavin* and *Gordon Hanson,* for appellants.

*Velikanje & Velikanje* and *Smith & Tuck* (*Ford E. Smith,* of counsel), for respondents.

BEALS, C. J.—Plaintiffs, Ed. Thys and Albert K. Miller, copartners under the firm name of Thys & Miller, instituted this action against Wilfred E. and Lucy Rivard, as defendants, asking for judgment for royalties alleged to be due under a written agreement, signed by plaintiffs and defendant Wilfred E. Rivard (who will hereinafter be referred to as though he were the sole party defendant in this action). Plaintiffs also asked for an accounting, for an attorney's fee, and for general relief.

It is admitted that the parties signed the agreement, referred to in plaintiffs' complaint and a copy of which was attached thereto as an exhibit. This agreement reads, in part, as follows:

"THIS AGREEMENT, made this 25th day of March, 1943, by and between THYS & MILLER, First Party, and Wilfred E. Rivard of Moxee City, Washington, Second Party,

"WITNESSETH:

"WHEREAS, First Party is the licensee of E. CLEMENS HORST COMPANY, a New Jersey corporation, of San Francisco, California, under certain United States Letters Patent relating to the art of hop picking, and hop separating and recleaning machines hereinafter referred to as an Arm Picker Belt,

"WHEREAS, First Party is willing, on the terms and conditions herein set forth, to sell certain of said Arm Picker Belt and to license Second Party to use said Arm Picker Belt in the Letters Patent herein described, and related thereto; and

"WHEREAS, Second Party is desirous of purchasing said

Arm Picker Belt upon the terms herein set forth, and is desirous of securing a license for themselves to use said Arm Picker Belt.

"Now, THEREFORE, in consideration of the covenants and agreements herein contained, and for good, adequate and valuable consideration between the parties moving, it is hereby agreed as follows:

"I. First Party agrees to sell to Second Party, and Second Party agrees to purchase or cause to be purchased from First Party Arm Picker Belt upon the terms and conditions herein stated. Said Arm Picker Belt is to be delivered by First Party on or before April 1, 1943.

"II. Second Party agrees to pay to First Party, as and for the purchase price of said Arm Picker Belt, the sum of $144.20 FOB Sacramento, California, and payable as follows; Cash."

The second party then agreed to pay all sales and excise taxes on the sale of "said Arm Picker Belt" and to assume, for the benefit of first party, "all obligations of this agreement pertaining to the use of such Arm Picker Belt including the obligation for payment of royalties hereinafter provided for." It was agreed that "Title to said Arm Picker Belt shall pass to Second Party as purchaser of said Arm Picker Belt upon payment to First Party of the full amount of the purchase price specified in Paragraph II"; it being further agreed that

"VI. It is expressly understood that the sale of said Arm Picker Belt is without the right to use said Arm Picker Belt, and that in order to use said Arm Picker Belt Second Party must secure from First Party a license to use said Arm Picker Belt, and that the continuing right to use said Arm Picker Belt is strictly conditioned upon the full and faithful performance of such license; wherefore, First Party hereby grants to Second Party a non-exclusive, indivisible, and non-transferable license, as long as the terms hereof be fully and faithfully performed and maintained, to use said Arm Picker Belt, for the purpose for which said Arm Picker Belt were [was] designed, under the following United States Letters Patent: . . ."

Then follows a list of the patents referred to in the preceding paragraph. By paragraph VII of the agreement, Rivard, in consideration of the licenses granted, agreed to

pay first party a royalty of fifty cents per two hundred pounds of dried hops processed by him, the minimum royalty to be not less than one hundred dollars per annum, and, by the following paragraph, agreed to furnish statements showing the "amount of royalties payable on Arm Picker Belt sold hereunder and the manner in which such amount was computed."

The term of the license granted was for seventeen years from the date of the agreement. Second party then conceded the validity of all letters patent referred to in the agreement, and agreed to keep "on said Arm Picker Belt" plates and stencils placed thereon by first party, it being stipulated that first party should not be liable for loss of or damage to "said Arm Picker Belt nor for any injury to persons or damage to property" occasioned by the operation thereof.

It was further agreed that "no representation or warranties, express or implied, are or have been made by First Party or any of its agents concerning said Arm Picker Belt or their [its] use"; also, that the terms of the contract comprised the entire agreement between the parties; that second party should not assign the agreement nor any interest therein; that time was of the essence of the agreement; and that all remedies therein provided for should be cumulative and not exclusive of any other remedies provided by law. The agreement contains other provisions not important to this controversy. The agreement bears date March 25, 1943, and was acknowledged by Mr. Rivard April 22, 1943, in Yakima county, Washington.

By his answer, defendant admitted signing the agreement in form as pleaded by plaintiffs, but denied that the equipment referred to therein was ever delivered to him by plaintiffs. He admitted that plaintiffs had made demand upon him for payment of royalties, but denied that any such payments were due from him or that there was any necessity for an accounting between the parties.

By way of an affirmative defense, defendant alleged that the contract was signed, following negotiations which terminated in the sale by plaintiffs to defendant of a "diamond mesh belt," which was sold and delivered by plaintiffs to

defendant for the sum of $144.20, paid by defendant to plaintiffs; that, at the time of the sale and purchase of this diamond mesh belt, plaintiffs represented to defendant that the purchaser of this article had no right to use it without a license, under patents controlled by plaintiffs, for which use payment must be made as set forth in the agreement referred to above; that these representations were false; that the agreement between the parties was void for want of a meeting of the minds of the parties to the contract, defendant having bought and paid for the article sold him by plaintiffs; that the article was not the appliance that plaintiffs licensed defendant to use; and that the agreement was void and unenforcible.

Defendant further alleged that, by fraudulent representations, plaintiffs had induced defendant to pay them the sum of $508.50 for alleged royalties due from him during the hop processing season of 1943; that that sum of money had been obtained from defendant by fraud and misrepresentation; and that, by such misrepresentations, defendant had been damaged in the sum of one thousand dollars. Defendant also asked, by cross-complaint, for a declaratory judgment stating that defendant was nowise indebted to plaintiffs under the agreement between the parties, and that he be granted such further relief as may be just.

Plaintiffs having denied the affirmative allegations in defendant's answer and cross-complaint, the action was tried to the court, with the result that findings of fact and conclusions of law were entered in defendant's favor, followed by a decree dismissing plaintiffs' action with prejudice, rescinding the contract for the payment of royalties, and awarding defendant judgment against plaintiffs for the amount he had paid, in the sum of $508.50, together with interest and costs.

From this decree, plaintiffs have appealed, assigning error upon the admission of certain exhibits offered in evidence by respondent and admitted by the court, and the striking by the court of certain testimony given by appellant Thys; upon sustaining objections to certain questions propounded to Mr. Thys; upon the entry of three findings of fact and

two conclusions of law; upon the refusal of the trial court to enter a decree in appellants' favor; upon the entry of the decree; upon the denial of appellants' motion for a decree in their favor as a matter of law; and upon the denial of appellants' motion for a new trial.

The agreement between the parties, referred to above, is in evidence. It is a mimeographed form, with blanks left for dates, names, type of machine sold, cash payments, reserved royalties, and other information. In the exhibit, the machine sold is described throughout as an "arm picker belt." This is true even in paragraph two covering the sale of the appliance for $144.20.

Appellants were engaged in business in Sacramento, California, manufacturing and selling hop picking machines. They were patentees, or licensees, of several patents covering machines used for that purpose. One of these patents was issued April 19, 1938, for a hop picking machine to be used for picking hops in the fields directly from the vines. The claims allowed by the patent were numerous. From them, it appears that the machine was constructed for removing arms and large leaves from the hop vines, breaking hop clusters, and so forth. A portion of the machine consisted of an endless wire mesh belt, the meshes of which were described as substantially diamond-shaped. It also included chains for driving the belt and for supporting it, appliances for delivering clusters of hops to the upper surface of the belt, a cylinder beneath the belt, and V-shaped flexible picking fingers secured to the cylinder for the purpose of pulling hops from the vines which had been gathered onto the belt. These claims are enumerated at great length.

The diamond wire mesh belt, referred to in the claims, is very like ordinary chicken wire, save that the meshes are diamond-shaped. The belt is about sixty-seven inches in width, the meshes being approximately four by two inches in size. This wire mesh was constructed especially for appellants, but could be manufactured by any person engaged in the business of making wire fencing. As an article of merchandise, it is protected by no patent and is not patentable.

In the machine sold by appellants, the belt is used as a carrier to take the hops through the "picking fingers," and is operated by chains, shafts, bars, sprockets, and other accessories, the patent protecting the combination of these articles into that part of a hop picking machine designated by appellants as an "arm picker belt."

In the course of their business, appellants usually sold the complete hop picking machine. Respondent, having learned that the appliance was useful in gathering hops and could be purchased from appellants, visited appellants in their place of business during the month of November, 1942. Appellants could not furnish him with a machine, parts being unavailable because of wartime shortages. They did, however, inform respondent that they could sell him a quantity of the diamond mesh belt and suggested that respondent, who conducted a hardware store in Yakima, could procure the other appliances and build a complete arm picker belt. Respondent testified that he was advised that, in order to use the diamond mesh belt in his stationary hop picking machine for the contemplated purpose of picking hops, respondent was required to enter into a license agreement with appellants.

An understanding was finally reached between the parties, to the effect that appellants would sell respondent a sufficient quantity of the diamond mesh belt; that the parties would sign the agreement, which was later executed; and that respondent would endeavor to obtain any other necessary appliances and install the mesh belt in his own hop picking machine or build a new machine.

Shortly thereafter, appellants billed respondent for two hundred fifty feet of "diamond mesh belting" at one hundred forty dollars, plus sales tax of $4.20. Respondent received the wire mesh and paid the amount asked. The bill was dated March 25, 1943, the date of the contract that respondent signed and acknowledged April 22, 1943. The agreement was forwarded to respondent in a letter, in which appellants stated:

"Enclosed is Agreement in duplicate covering use of the arm picker belt which we shipped to you recently.

"Will you please sign the original and return it to us, the other is for your files.

"We trust that this belt will perform its function to your satisfaction."

Respondent later obtained some other necessary appliances, such as chains, sprockets, and so forth, and installed the diamond mesh belt in his hop picking machine. The wire belt was the only article respondent received or expected to receive from appellants and the only article which they contemplated delivering to him.

Manifestly, the agreement that the parties signed did not accurately set forth what the parties intended to do or did. One reading the agreement would assume that an "arm picker belt" had been sold to respondent by appellants for the sum of $144.20, which was not the case.

If respondent could have purchased the diamond mesh belt from anyone else or could have made one himself, he could have used it on a hop picking machine, in so far as the wire mesh was concerned, without infringing any patents owned or controlled by appellants. Of course, if a machine constructed or operated by respondent otherwise infringed upon any of these patents, respondent would have been liable to the patentees for infringement.

By the complete agreement between the parties, respondent was authorized to construct such a machine as appellants manufactured and sold under the patents which they controlled. If, pursuant to the agreement, respondent did construct such a machine, he would be liable to appellants, under the contract, to pay the royalties agreed upon. It does not appear that, at that time, either of the parties had any definite idea as to the particular type of machine respondent would construct and use. In so far as the contract referred to the *use* of the arm picker belt, they contemplated the use of an appliance not then in existence, which respondent had the right to construct and use in picking his hops. Respondent was to build this machine himself out of such materials as he was able to procure. He nowhere obligated himself to construct a machine which would employ any processes or appliances protected by appellants' patents.

In other words, respondent purchased and paid for a quantity of wire mesh, which was not protected by any patent, and obligated himself to pay appellants royalties, if and when he constructed and used a machine which, in any manner, infringed upon appellants' patent rights.

Appellants, in their complaint, set forth the agreement and alleged that they had "delivered to the defendant that certain equipment referred to in said agreement, Exhibit A," and then demanded payment of the agreed royalties. Appellants never furnished respondent an "arm picker belt," but simply sold him two hundred fifty feet of wire mesh.

Appellants sued respondent upon the agreement, asking for an accounting and judgment for royalties, based upon the amount of hops which respondent had processed during the 1944 season. Appellant Thys frankly admitted that he had no patent covering the diamond mesh belt, but appellants contend that the process of carrying hops on the diamond mesh belt, as a part of a hop picking machine, having fingers working with the diamond mesh to pick hops off the arms, is covered by the claims of appellants' patent and that "the claims of the patent are broad enough to cover any kind of machine where the diamond mesh is used as a carrier to pick hops in cooperation with picking fingers."

Appellants called respondent Rivard, as their witness, to prove that he executed the agreement, that he paid the royalty claimed for the 1943 hop season, and the number of pounds of hops he gathered during the 1944 season. Mr. Thys was the only other witness called by appellants. He had never seen the machine after the installation of the diamond mesh conveyor until the time of the trial. He testified that the machine, in connection with the wire mesh belt, did infringe upon his patents. An expert witness, called by respondent, testified that there was no infringement.

At the close of the case, the trial judge expressed his view of the matter, directing that judgment be entered in favor of the respondent. During the court's summation of the evidence, respondent's counsel inquired:

"Your Honor, is your ruling also to the effect that there is no infringement there under the declaratory judgment?

THE COURT: My ruling is that I have no authority to talk about that, I think. I have no authority over an alleged infringement, have I? [Respondent's counsel]: I think you have. They have submitted it here. [Appellants' counsel]: I don't think so. We submitted it merely in answer to their contention."

Later, the judge again expressed the view that he had no jurisdiction over the matter of infringement, and that that matter was not before the court. Counsel for respondent acquiesced in the court's view, saying "We won't insist on a ruling on it, Your Honor."

■ In 3 Walker on Patents (Deller's ed.) 1602, § 413, the rule is stated that "State courts have no jurisdiction of cases arising under the patent laws of the United States. [Citing cases.]"

The text continues:

"This does not mean that every case in which a *patent question* is involved is within the exclusive jurisdiction of the Federal courts, because the jurisdiction of the state courts to determine *questions* arising under the patent law, when merely incidental to *cases* which do *not* arise under that law, is well settled. In *New Marshall Engine Company v. Marshall Engine Company,* 223 U. S. 473, 474, 56 L. Ed. 513 (1912), the rule was stated:

" 'The Federal courts have exclusive jurisdiction of all cases arising under the patent laws, but not of all questions in which a patent may be the subject-matter of the controversy. For courts of a State may try questions of title, and may construe and enforce contracts relating to patents. *Wade v. Lawder,* 165 U. S. 627.'

"Actions brought to enforce contracts between private parties, relevant to patent rights, are not actions arising under the patent laws of the United States of which the federal courts have exclusive jurisdiction, and therefore they may properly be brought in State courts. [Citing cases.]"

■ No question concerning this matter is raised upon the appeal before us. Under the evidence, the trial court correctly ruled that appellants sold to respondent, for cash, two hundred fifty feet of wire mesh, which was not a patented article, and sold to respondent nothing else. In this action, the burden of proof rested upon appellants to show that

respondent had constructed and used a machine which was covered by their patents, and the use of which they had, under those patents, the right to authorize respondent to employ in his business, upon payment of royalties or for other considerations.

As stated above, appellants' counsel agreed with the trial court's ruling that the court had no authority to consider, in the action being tried before him, any question of "infringement." Respondent's counsel did not insist that the court rule on this question. Of course, the word "infringement," as ordinarily employed in patent cases, does not properly describe the situation here presented. Under the written agreement and the contemporaneous oral understanding between the parties, respondent had the right to construct a machine protected by appellants' patents. Had he done so, he would not have been liable to appellants as for infringement; he would have been liable to pay royalties under the contract. Whether or not the machine he built was within the protection of appellants' patents, was not determined by the trial court. Appellants contended that no such question was before the court, agreeing with the court's view of the matter. They sued upon the contract between the parties, contending that, under this contract, they were entitled to recover judgment for the royalties provided for therein.

Of course, if appellants had sold respondent a hop picking machine, for the use of which respondent had agreed to pay certain sums by way of royalties or otherwise, an entirely different question would have been presented, but appellants did not sell respondent a machine—they merely sold him two hundred fifty feet of wire mesh.

Appellants contend that nonuser under the contract between the parties is no defense, and that, even though he never used the wire mesh in connection with a hop picking machine, respondent is still liable under the contract. The written contract between the parties contains no express provision granting respondent the right to construct for himself an arm picker belt; but it follows, from the oral negotiations preceding the signing of the written agreement

by the parties and the necessities of the situation, that respondent had such right. Pursuant to the written agreement, respondent had the right to use the patented arm picker belt, but, at that time, he had possession of no such appliance. Prior to the signing of the agreement, appellants suggested to respondent that respondent himself procure the other accessories necessary for the construction of the appliance. Under these circumstances, the right to use necessarily implied the right to make; otherwise the right to use would be of no value.

In 2 Walker on Patents (Deller's ed.) 1461, § 366, is found the following text:

"In the absence of express reservation, however, some licenses are extended by implication, so as to convey, not only what they expressly cover, but also some right which is necessary to the full enjoyment of the right expressly conveyed. . . .
"This practice of extending licenses by implication is not in conflict with the rule which prohibits the enlargement of an instrument in writing by parol evidence; because that rule is directed only against the admission of oral evidence of the language, used by the parties in a contract which was reduced to writing. [Greenleaf on Evidence, Section 277.] This practice relates to the legal effect of the language actually written, and is based on that maxim of the common law which prescribes, that any one granting a thing, impliedly grants that, without which, the thing expressly granted would be useless to the grantee. [Citing cases.]"

In the same volume, p. 1464, § 368, under section title "Express Licenses to Use, With Implied Leave to Make for Use," the rule is stated as follows:

"An express license to use a limited or unlimited number of specimens of a patented article, implies a right to make those specimens, and to employ others to make them, and will protect those others in making them for the use of the licensee."

Several authorities are cited in support of the principle laid down, including *Edison Electric Light Co. v. Peninsular Light, Power & Heat Co.*, 95 Fed. 669 (affirmed by the circuit

court of appeals, sixth circuit, 101 Fed. 831, 43 C. C. A. 479),
in which the court said:

"Nobody contemplated that the consumers would be required to obtain an express license from either company,
either to make or use the apparatus. If the circumstances
indicate such an intention, a license to use implies a license
to make the thing to be used. [Citing cases.] In the present
case the circumstances clearly indicate that this was the intention, and the subsequent conduct of the parties confirms
the implication."

The case of *Dunkley Co. v. California Packing Corp.*, 277
Fed. 996 (certiorari denied, 257 U. S. 644, 66 L. Ed. 413, 42
S. Ct. 54), is also in point in this connection.

By paragraph four of the written agreement, *supra,* respondent was sold one portion of an arm picker belt; the
particular appliance in which the wire mesh was to be used
not then being in existence. When, and if, an arm picker
belt that was within the claims of appellants' patents was
constructed and used by respondent, he would be obligated
to pay the royalties mentioned in the contract, not less than
the annual minimum. Respondent was not granted an exclusive right to use the arm picker belt covered by appellants' patents, nor did appellants agree to give up any right
whatever to sell machines covered by their patents in any
territory.

In support of this phase of the argument, appellants'
counsel cites several cases. In the case of *Hubbard v. Allen,*
123 Pa. 198, 16 Atl. 772, it appeared that the licensee was
granted an exclusive license and, in fact, used some of the
patented devices.

In the case of *Kroegher v. The McConway & Torley Co.,*
149 Pa. 444, 23 Atl. 341, it appeared that the defendant
licensee had received from the owner all plans, instructions,
secrets, and so forth, of a patent for forging hooks for car
couplers, to be made in its factory. In an action in *assumpsit*
to recover for use of the invention, judgment was entered by
the trial court upon the verdict of a jury in favor of the
plaintiff. It appeared that the licensee produced an article
"made upon the plans, under the instruction, and with the

identical dies that were got from the plaintiff." The judgment was affirmed. The court, citing its opinion in *Hubbard v. Allen, supra,* held that the licensee would be "liable for the stipulated royalty if he uses any part of the invention."

In *Bassani Processes v. Edward Stern & Co.,* 125 Pa. Super. Ct. 537, 189 Atl. 539, it appeared that the defendant had used a specific piece of equipment which it had had constructed; that the owner of the patent had claimed that the equipment infringed its patent; and that the defendant had agreed to pay two hundred fifty dollars per annum for a license to use the equipment during the life of the patent. Thereafter, the parties adjusted their differences by agreeing that the equipment should be licensed, as though it were within the scope of the patents. The contract amounted to an agreement to settle a disputed question between the parties, namely, whether or not the defendant had been guilty of infringing upon plaintiff's patent rights. The contract covered every item in dispute. There was no question of the omission of anything from the contract because of fraud, accident, or mistake, nor was there any ambiguity in the agreement itself.

In the case of *Lauth v. McKenna Steel Working Co.,* 160 Wis. 309, 151 N. W. 797, a patentee of a heating furnace, in consideration of an annual royalty for each furnace constructed, granted to the defendant " 'the sole and exclusive right to use the furnace' " covered by the patent during the life of the patent. The defendant constructed five furnaces pursuant to the license, and, in an action to recover the agreed royalty, defended upon the ground that, during the period for which the royalties were sought, it had not used the furnaces. The court observed that the patentee, having granted an exclusive license, was

" . . . thereby deprived of the use of his patents, and the defendant has the right to use the device covered by them or keep them off the market. It is the right which the defendant acquired, to use or not at its pleasure, for which it is paying, and not for the use of the particular device."

The case of *Miller v. O. B. McClintock Co.*, 210 Minn. 152, 297 N. W. 724, also concerned an exclusive license. The supreme court of Minnesota held that the contract was not an option, but that the grant of the license was for the life of the patents and that the licensee had agreed to pay royalties during the term of the contract.

In *Linington v. Strong* (1878), 90 Ill. 556, it appeared that the parties had expressly agreed that, under a grant of an exclusive license, the licensee should pay certain sums, whether the patented appliance was manufactured or not.

In *United States v. Harvey Steel Co.*, 227 U. S. 165, 57 L. Ed. 464, 33 S. Ct. 258, the licensee had received all methods, plans, instructions, secrets, and so forth, required for the construction that the United States desired to make, and was using the same in whole or in part. It was held that the defendant in the action had received all that had been bargained for and should pay the stipulated amount.

■ In the case at bar, respondent received from appellants only a diamond wire mesh belt, an unpatented article which he could have bought in the open market and used at pleasure. Respondent did not receive a completed machine, but, under the entire agreement between the parties, he obtained the right to construct such a machine, in accordance with appellants' patents, when, as, and if he desired to do so. It was not the intention of the parties that royalties be paid for merely the right to construct and use a machine.

The authorities relied on by appellants are not applicable to the situation here presented and do not support appellants' contention that respondent was obligated to pay at least the minimum annual fee, referred to in the written contract between the parties.

The trial court held that the contract should be rescinded and entered judgment accordingly.

The court awarded respondent judgment for the amount of $508.50, together with interest, covering the supposed royalties for use of the belt during the year 1943, which amount respondent had paid.

■ Under the facts disclosed by the record, before respondent was entitled to recover this payment, it was incum-

bent upon him to show that he had made the payment under a mistake of fact, or that he had been induced to make the payment by fraud on the part of appellants. 40 Am. Jur. 820, Payment, § 155, also p. 843, §§ 186, 187.

In the case of *Speckert v. Bunker Hill Arizona Mining Co.*, 6 Wn. (2d) 39, 106 P. (2d) 602, 131 A. L. R. 125, we said:

"The general rule is that a voluntary payment can not be recovered back; but this, of course, has no application where the payment was induced by fraud on the part of the payee. [Citing authorities.]"

In the case of *E. R. Squibb & Sons v. Chemical Foundation*, 93 F. (2d) 475, the United States circuit court of appeals for the second circuit affirmed a judgment of the district court in favor of the plaintiff for the recovery of royalties paid under a mistake of fact.

■ In the case at bar, had the trial court found that the machine set up and operated by respondent was not, in fact, a machine covered by appellants' patents, respondent would have been entitled to recover the payment he had made, under the authorities cited. As to this phase of the case, the burden of proof rested upon respondent to show that the payment was made under a mistake of fact. Respondent did not insist that the trial court enter a finding upon the question of infringement or noninfringement. As stated above, the court made no finding upon this question. We shall not decide this question, which the parties agreed that the trial court should not, or need not, determine.

■ The record does not support the judgment in respondent's favor for the recovery of the money which he paid to appellants.

We are convinced that respondent knew that the written contract between the parties granted him the right to construct an arm picker belt that was covered by appellants' patents, for the use of which he should pay the agreed royalties. No royalties became due until respondent should construct and use such an appliance, and the court did not find that he constructed such a machine.

■ The decree of the trial court rescinding the contract is not supported by the record.

██ Finally, respondent contends that there was no consideration for the written agreement, as the same purported to grant him merely the right to use the wire mesh belt, an unpatented and unpatentable article. The agreement between the parties granted respondent more than that, in that it granted him the right to construct and use a machine which was covered by appellants' patents. The contract, therefore, was not void for want of consideration, nor was the contract in violation of public policy. Respondent did not agree to construct an arm picker belt that came within the scope of appellants' patents, neither did he agree to purchase any further appliances whatever from appellants. The record does not show that the contract between the parties created, or tended to create, any restricted monopoly in appellants' favor in selling their unpatented diamond wire mesh belt.

Respondent suggests that, in the event that this court remands the case to the trial court to determine whether or not respondent was entitled to a declaratory judgment in his favor, it should be held that the contract between the parties was limited to the use of the particular diamond wire mesh belt which respondent purchased from appellants. Respondent did not cross-appeal, and the record does not justify the granting of his request. Neither, upon our view of the facts and the law, are appellants entitled to a declaratory judgment to the effect that respondent is required to pay royalties to appellants.

In so far as the findings entered by the trial court are in conflict with the views herein expressed, they are set aside as not supported by the preponderance of the evidence.

██ We hold that the matter of respondent's liability to appellants depends upon whether or not respondent constructed and used a machine or appliance which is covered by appellants' patents. If respondent did this, while he is not responsible as for infringement of patent, he is liable to appellants for the payment of royalties under the contract which he signed.

The cause is remanded to the superior court, with instructions to determine this question. The court may, in the

exercise of its discretion, permit the introduction of further evidence upon this phase of the case which may be offered by either party.

The judgment appealed from is vacated and set aside and the cause remanded for further proceedings in accordance with this opinion.

In consideration of the fact that neither party insisted that the trial court decide the question of whether or not the machine constructed and used by respondent was covered by appellants' patents, neither party will recover costs in this court.

STEINERT, ROBINSON, JEFFERS, MALLERY, and CONNELLY, JJ., concur.

MILLARD and BLAKE, JJ. (dissenting)—We are of the view that the judgment should be affirmed in all respects.

SIMPSON, J., dissents.

———

September 6, 1946.  Petition for rehearing denied.