# Kroegher *v.* The McConway & Torley Company, Appellant.

*Practice C. P.—Points—Charge.*

A judge is not bound to answer in detail every point put to him, nor even to affirm correct legal propositions in the exact phrase asked for. It is not error for him to refuse points without reading them to the jury, if his charge contains nothing erroneous and omits nothing favorable to the party presenting them which the points properly call for.

*Invention—License to use—Patent.*

Where one has agreed to pay for the use of an invention, it is immaterial whether or not the invention is patented, although of a kind that would entitle it to a patent; that there is no patent is no defence in an action on the agreement to pay.

A licensee of a patent is liable for the stipulated royalty if he uses any part of the invention: Hubbard v. Allen, 123 Pa. 198.

*Variance—Time to take advantage of—Amendment.*

Where, in his statement, plaintiff claims for an " exclusive " use of his invention under an agreement to pay therefor, and the evidence fails to show that the use granted was exclusive but is admitted without objection, and the defendant does not plead surprise nor ask for a continuance but defends on the ground that there was no contract at all, after a verdict against him he cannot take advantage of the variance, although he has moved for a nonsuit on that ground, and also presented points covering it; but plaintiff will be allowed, in the Supreme Court, to amend his statement to conform to the evidence.

Argued Oct. 27, 1891. Appeal, No. 18, Oct. T., 1891, by defendant, from judgment of C. P. No. 1, Allegheny Co., Sept. T., 1889, No. 3, on verdict for plaintiff, William C. Kroegher. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Assumpsit to recover for defendant's use of an invention of plaintiff.

By his statement, plaintiff claimed that defendant was indebted to him under an agreement by which defendant was to have the exclusive use of an invention of plaintiff for forging hooks for car couplers out of wrought iron, and to pay therefor 25 cents royalty on each car equipped with two of said couplers. On Oct. 6, 1890, plaintiff amended his statement by alleging that the contract therein set out as made in 1883 with the defendant, was made with McConway, Torley & Company, a partnership, the members of which shortly thereafter organized the company defendant, by which the contract in the statement was, upon its organization, ratified and accepted.

The case was tried before STOWE, P. J., Oct. 20, 1890. On the trial, it appeared that plaintiff had obtained a patent in 1882 on the dies for making the hooks in question, but that he had somewhat modified, in practical use, the exact form of dies shown in the patent; and that the dies which he furnished to defendant were made in accordance with this modification.

Other facts appear by the opinion of the Supreme Court.

At the conclusion of plaintiff's evidence, defendant moved for a nonsuit for the following reasons : (1) that plaintiff's evidence varied from his statement in that there was no evidence that an " exclusive " right was vested in the defendant ; (2) that there was no evidence that the defendant assumed any contract to pay royalties ; (3) that the dies as used by the defendant were not covered by the claims of plaintiff's patent. The motion for a nonsuit was overruled.

Defendant's points, none of which were read to the jury, and all of which were simply refused, except the 3d, the answer to which is given, were, with one other, as follows :

" 1. Plaintiff avers that his contract was made with McConway and Torley, a general partnership, and not with defendant, the McConway and Torley Company, a corporation organized and doing business under the laws of Pennsylvania. There is no evidence that the defendant ever assumed such a contract as plaintiff declares on or agreed to its terms, therefore the verdict must be for defendant.

" 2. Plaintiff brings his action upon a contract to pay him twenty-five cents royalty for each pair of hooks manufactured

by defendant in consideration of the exclusive use of plaintiff's invention.

" There is no evidence that plaintiff ever gave defendant the exclusive use of his invention, therefore your verdict must be for defendant.

" 3. The consideration of the contract to pay the royalty sued for being the exclusive use of plaintiff's invention, plaintiff cannot recover, if you believe he granted to others the right to use said invention, or aided and assisted others in the use thereof subsequent to the date of his contract with McConway and Torley, which he alleges was between October and December, 1884.

" *Answer* : Refused, because plaintiff's case is not under the evidence based upon a contract for exclusive use.

" 4. A license to use a patented invention is a personal privilege and is not assignable by the licensee, and no contractual relation exists between the assignee of the licensee and the licensor, without the privileges and protections of the license are confirmed to such assignee by the licensor; therefore the plaintiff cannot recover against this defendant under the alleged contract with McConway and Torley, without proof that he vested in the defendant the exclusive use of the invention, which was the consideration of the contract between him and McConway and Torley, and of this there is no proof, and your verdict must be for the defendant.

" 5. Plaintiff's evidence is not sufficient to sustain his averment that a contract existed between him and defendant, because his evidence does not show that he ever gave the defendant the exclusive use of his patent, or that he ever gave defendant any use of it for any term, nor does it show how and at what times the payments of royalty were to be made.

" 6. There is no evidence that a single stockholder, officer, or director of defendant ever heard of any contract with plaintiff except Wm. McConway, the president, and he denies that either the contract sued upon or any other was made or assumed by him as an officer of defendant, or as a member of the firm of McConway and Torley, render defendant liable in this action.

" 7. Declaration in this case averring a contract for the payment by defendant to plaintiff of certain royalties for the exclusive use of an alleged invention proven to have been patented

by letters patent of the United States, No. 256, 147, dated April 11, 1882, and there being no evidence of the making and delivery, or of the tender of plaintiff to defendant prior to the bringing of this suit of any instrument in writing, either containing, or purporting to contain, a grant of such exclusive right, plaintiff cannot recover.

" 8. A contract for the grant of an exclusive right under a patent cannot be performed or made complete by the grant of anything less than an exclusive right. If it appears from the testimony that the plaintiff himself has done anything in derogation of any right he contracted to grant, or is unable for any reason to make a good and effectual grant to defendant of an exclusive right under his patent, then he has no ground of action, and the verdict must be for defendant.

" 9. Declaration in this case averring a contract for the payment by defendant to plaintiff of certain royalties for the exclusive use of an alleged invention in dies for forging coupling hooks, and it appearing from the testimony of plaintiff himself that he is and has been continuously using the same dies in derogation of his alleged exclusive grant, he cannot recover.

" 10. Though the jury find from the evidence that a contract was actually made, authorizing the use by defendant of a patented invention of plaintiff's, still the plaintiff cannot recover in this action unless the jury also find from the evidence that the dies used by the defendant embrace substantially the invention described and claimed in the plaintiff's patent.

" 11. If the jury find that the dies used by the defendant contain no invention other than what is involved in making their cavities to conform in shape to the shape of the coupling hook to be forged therein, and that such hook was a thing previously known, then such dies contain no patentable invention, and the right to use such dies cannot constitute a sufficient consideration to support a contract to pay royalties under a U. S. patent for another construction of dies, and the plaintiff cannot recover.

" 12. The undisputed testimony of both sides being that neither the upper nor the lower dies used by the defendant have any part of their working faces removable or removably connected with such die, nor any part which by movability or removability lifts or aids in lifting the forged hook from the

die in which it is forged, either substantially as described in plaintiff's patent or otherwise, the court is asked to charge the jury that defendant's dies do not contain the plaintiff's patented invention, and that their verdict must be for defendant.

"13. Under all the evidence the verdict must be for the defendant."

The charge of the court, omitting the introduction and conclusion, was as follows:

" You have heard a good deal said about a patent, and you have heard what occurred between the court and counsel and the counsel one with another, with reference to a certain phase of this case depending on whether or not the defendant who made these dies, or made the hooks from these dies, did it in violation of the patent right—I do not mean the thing itself, but the patented rights of the plaintiff. That is a matter we cannot determine in this court, and there is where we are trying to draw the line. We can determine the contract with reference to common law principles. Although the subject is a patent right, it is transferable, but we cannot determine between one party and another whether a patent is good or bad. That depends entirely on the acts of congress, and the exclusive jurisdiction as to the patentability of an article, except in certain cases that do not arise here, is to be determined in the United States court. But you have before you the patent, which is admitted, not for the purpose of showing that this is a patentable article, or that the patent itself is valid under the acts of congress, or invalid, if the evidence would tend to show that on the other side, but simply to indicate to you what the parties were actually contracting about. Under one phase of the case it was apparently referred to; in another it was not.

" Now, it is alleged that the patent itself—the description of the article patented—does not affect the article subsequently manufactured. That, in my opinion, does not make a bit of difference, provided the article that was manufactured was in form and in substance what the plaintiff himself undertook to give the defendant a right to manufacture, and which he agreed to make, and, for the present, did not agree to pay for. It does not make a bit of difference whether the patent covered it or not, but when you come to consider the question of whether the same article was manufactured that the plaintiff undertook

to allow the defendant to manufacture, and the defendant agreed to pay for, you will look at the patent and give it whatever bearing it may have on the subject.

" But, after all, the main matter seems to be that at the time the contract was made there was a certain visible article used, passed over or examined by the parties, on which was based, apparently, the contract made; and if the thing that was manufactured corresponds in substance and form with that, I do not mean radically in form, but substantially in form with that, and was manufactured under the assumption that it was under this patent, or under the right permission received from the plaintiff, recognized as such by both parties, I instruct you, as a matter of law, the defendant cannot now turn around and repudiate the contract, although there may be some slight difference.

" Then, gentlemen, the first question is, was there a contract by which the defendant agreed to pay whatever it might be worth, the law would say, if there was no stipulated price, or a stipulated price for the right to use these dies for the purpose of manufacturing the tongues, bolts, for this Janney coupler. That is the first question, was there a contract binding upon this defendant, the McConway Torley Company. It is not enough to show that there was a contract made with McConway as a member of McConway and Torley. If that was all there was in the case that would not do, although the very parties that constituted the partnership of McConway and Torley might have been the sole stockholders in the company. They are two different distinct existences, and there would have to be something done on the part of those representing the company before they could be held liable for the contracts made by the partnership.

" When you come to consider the question on the doctrine of implied contract or liability for a contract which existed, you have to go back and start with the inception of this affair to see whether or not when and after the Janney Company, as it was originally called, was incorporated and got into actual legal existence, it, or its successors, the present company rather, (not the successor, but the same party under another name,) continued to manufacture or do that which would show they were going on the assumption that they were bound and had a right

to carry out, were responsible for and entitled to the benefits of the contract made before with the plaintiff, by the partnership, or by the previous company, the Janney Company.

"If it was by the Janney Company, that is this company, and as the books show in one case I was looking at, it does not change the liability of a corporation because the name is changed, any more than it would change the liability of a woman — the very suggestion I made the other day—because she would get married, or because a man would go to the legislature or court and get his name changed to some other name. It would not affect the contract. It is the same person, same individual, and the name amounts to nothing. As I understand it, in a general way, because I am not going to refer particularly to the testimony, Mr. McConway at that time was a member of the firm of McConway and Torley, understood that the plaintiff had gotten up some device by which the supposed, or alleged, or actual defect in this coupler was to a certain extent or perhaps entirely obviated by making a tongue such as you have heard suggested. He was interested, and if he did not own the Janney coupler he had a license to manufacture it, or at all events was interested in the manufacture and sale of the couplers. If this was an improvement, something to relieve it of a difficulty that would otherwise make the article less salable, less valuable, he would be interested in having the best means that could be gotten hold of to use, so as to make the article safe and salable.

"Having heard of this matter, whether it was patentable or said to be or not, at that time, perhaps, does not appear, nor do I think it is at all material, but with the purpose of getting permission from the plaintiff to handle this article he goes and sees it, and they have some conversation about it. The upshot of it is that while this partnership existed, before either of these corporations were formed, if I understand it, an arrangement was made as alleged by the plaintiff—denied however, you will recollect, by the defendant—that McConway & Torley were to manufacture these articles, and at first there was no compensation perhaps fixed upon, they let it lie over, and subsequently, I am not sure now whether that was after the organization of the Janney Company or before, the conversation took place by which the price was said to be fixed, by the plaintiff

—I think before the change of name, and during the existence of the Janney Company. That is my impression. At all events, previous to the organization of the present company, the defendant, they got together and settled all up to some time in June, 1884, and the defendant agreed to give one hundred dollars. They settled upon that. That amount was subsequently paid, and then the main contention begins as to whether there was an actual arrangement made for the future or not. Up to that time everything is settled, and all the circumstances in the case are material merely as indicating what the understanding of the parties was after that time; for the purpose of finding out whether or not at any time this company was working and operating this thing, it was legally bound to treat this arrangement as a contract between the parties by which it was bound to pay a stipulated price, if there was one; and the plaintiff was bound to allow them to manufacture, even if he saw fit to repudiate the contract. In other words, was there a contract and agreement that, under the circumstances of the case, the jury find was binding on both parties; not because one said I will, and the other said I will or you may, and you will, but whether the circumstances, the facts of the case, justify the jury in assuming or inferring from the manner in which the parties acted on both sides that they treated and considered the arrangement as existing by which the plaintiff had to allow the defendant to use this device, and the defendant was bound, having used it, to compensate the plaintiff, pay whatever it might be worth or the stipulated price the plaintiff claims.

[ "Upon that point you will recollect the plaintiff's testimony is that they got together; that there was an absolute agreement between McConway, representing whoever he did represent— he was the manager of this company, operating and acting as if he were doing it for the benefit of the Janney company—I believe it was before the reorganization, or change of name—and the plaintiff—understanding that he was representing the parties that had been McConway & Torley, by which after June, 1884, the defendant and whoever he represented, whether disclosed or not (is not really material, but it seems he did represent and intended to represent the company according to his own testimony), for the use of this particular die in the manufacture of bolts, and plaintiff was to be paid twenty-five cents a

car, and that there was to be an account kept of the manufactured article.

" Throwing everything out of the case that made the contract binding on whoever McConway represented. If he was acting manager of this company, as he seems to have been, and the company went on and used the dies,—whether it was called the Janney Company or the McConway & Torley Company makes no difference—under the assumption or right to manufacture these articles by virtue of that agreement, assuming one to be made, the manufacturer and the plaintiff understanding that they were doing that, and that that was the contract to be carried out by them, they are bound to pay, although there was no action of the board of directors, although there was nothing done except what the evidence would indicate as being done, a contract made by the party acting and having the right to act as agent for the company in that respect. The company would be getting the benefit of this.

" They were having the benefit of it, and it would be their duty, under the contract made by McConway to the plaintiff, to pay. The law would not allow them, by a change of name, or by a subterfuge, to get the advantage of a man's device, whether patented or patentable or not, so far as this case goes, and use it under the pretence they were going to pay for it, and then refuse to pay when they were afterwards called upon for an account.] [14] There is nothing in this case to indicate that the patentability of the article has ever been tested, nothing to show any other patent right exists that would compel the defendant to pay a royalty to some one else, therefore the case stands free from all of those objections. If that were the case, somebody else had a patent and had no right to it, had given a license for a royalty, and the defendant would have to pay under the royalty reserved by the contract to one man and then have to pay a royalty by way of damages to another, it would present an entirely different case, and the law of our state recognizes the rights of the defendant in such a case. But we have not anything of that kind. [We have nobody disputing the patentability of this article in such a way as to avail as a defence.

" So it comes in my opinion, and I so instruct you, to the question whether there was a contract made between Mr.

McConway, representing the defendant company, or under circumstances from which the jury might fairly infer he was representing that company, having a right to represent it, by which he agreed, as for that company, or as representing it, to pay the plaintiff for the use of the things that he did use. If he did the plaintiff is entitled to recover. He says he did not.] [15]

"Mr. McConway says—directing your attention more particularly to that matter—that all this conversation took place; that there was a payment of one hundred dollars, there was a talk of twenty-five cents royalty; and there was, in addition to that, something that was never done; that this was all preliminary to the fact of there being a patent on that article that was available, and that the right was to be exclusive, and that the matter lay in that way until the patent was obtained by him and submitted to counsel, when he was advised it was not such a patent as would protect the article he was manufacturing; and thereupon he ceased to recognize or to have anything more to do with it; in other words, he stopped the negotiation and just went on manufacturing it. If that is true, the company is not bound to pay, and we have not any jurisdiction, although the company might be liable and would be if it infringed this patent right. But if that is so, our jurisdiction is gone. We could not dispose of a case of that kind, but we can dispose of the other claim; if there is a mere contract we have jurisdiction. Outside of the question of contract, where the facts show there was no agreement to use a man's patent, and without his permission the party went on and used it without any contract or arrangement from which a contract could be fairly implied, the user becomes a wrongdoer—he does not do it under an assumed or actual contract, but does it because he can do it, assumes to do it in violence to the rights of the other, and the only way to bind him, so far as damages are concerned, is in the United States court.

"If there was no contract the verdict must be for the defendant, although you may think the plaintiff is entitled to recover damages by way of compensation for the use of his patent. Although that might seem to you clear, yet if it was not done in such a way as to justify the jury in finding there was an agreement by which the defendant was allowed to do it, whether for compensation or not, you must find for defendant because we have no jurisdiction.

" If, however, you believe there was a contract we have a jurisdiction, and it is for you to determine what amount of damages ought to be given the plaintiff under the testimony by way of royalty. You have had the number of machines manufactured, and you have, if you believe the plaintiff's story, the amount agreed upon. If that is taken as the measure, the sum is readily arrived at. If you should think there was an arrangement by which it was fairly understood that the defendant might use this die, so as not to subject himself to an action of damages by way of infringement of patent, but a general use arrangement by which they were to just go on and manufacture and make the best of it and settle up afterwards, instead of giving twenty-five cents a coupler, you would have to give whatever the evidence justified you in thinking was fair compensation for the use, not by way of damages, but for the use of this die.

" The defendant has presented a number of points which I need not read. I have refused them all, and sealed a bill, which will, if I am wrong, put the case in such shape that the supreme court will have no trouble in understanding what I have undertaken to bring before the jury. The sole question on which the defendant's liability depends, is whether the company expressly or impliedly agreed to use the dies and pay and compensate the plaintiff for their use, allowing a fixed sum, or, in the absence of any agreement for a fixed price, whatever the jury may think he is entitled to recover by way of compensation under the evidence.

" Was there a contract for the use of the plaintiff's dies, and did defendant use plaintiff's device, or what was substantially the same device in its operation and form ?.

" That brings us to a part of the defendant's case which it is your duty to consider, and which they have dwelt on at considerable length, and which is a material matter ; and that is, that this thing they used is not substantially nor in effect what they agreed to pay for, and they refer to the patent as one means of arriving at a determination of the question. If that is so, if the jury should not think that the article manufactured by the defendants was substantially the article that the plaintiff allowed them to manufacture, or gave over to them to manufacture, (whether it is covered by the patent or not, I do not

think it makes any difference) but think it is some other article, of course the defendant is not bound to pay the plaintiff for making something they never contracted to pay for; but because there may be some slight change or something that does not interfere with the substance or effect of the thing, that is substantial and material, I apprehend is not going to take away the right of the plaintiff to have his royalty. If that were the case, all a man would have to do would be to make a slight change in operation, which in principle or mechanical operation would not be of substance, and thus avoid paying for something he would never have thought of in the world, if the general principle had not been given to him by somebody else, and that somebody else one he had agreed to pay.

" If this is (not) in substance and every material respect, or at least in substantial effect the thing that defendant agreed to pay for, of course he could not be held liable here, and if there is any infringement on the plaintiff's right, it must be tested in another forum; but if there was a contract, although there may be a change that does not affect the substance of the machine or dies, the plaintiff has a right to recover, I say, assuming there was a contract."

*Errors assigned* were (1–13) refusal of defendant's points as above, quoting points and answers; (14, 15) the portions of the charge as above in brackets, quoting charge.

On the day the case was argued in the Supreme Court, plaintiff's counsel filed a motion to amend the statement by striking out the word "exclusive" wherever it occurred in connection with the word "license;" and to amend the supplemental statement by specifying the year 1887 as the time when the contract was ratified and accepted by the defendant.

*P. C. Knox*, with him *George H. Christy*, for appellant.—The contract in evidence did not support the pleadings, and a verdict should have been directed for the defendant; Cleaver v. Garner, 133 Pa. 419.

The use by defendant not having been exclusive, there was a failure of consideration: Angier v. Eaton, 98 Pa. 599; Marston v. Swett, 82 N. Y. 527.

The grant of an exclusive right under a patent must be in writing: Gibson v. Cook, 2 Blatch. 144.

*G. B. Gordon*, of Dalzell, Scott & Gordon, with them *William Bakewell*, for appellee.

OPINION BY MR. JUSTICE MITCHELL, January 4, 1892.

A judge is not bound to answer in detail every point that ingenious counsel may put to him, nor even to affirm correct legal propositions in the exact phrase asked for.   As was said by the present Chief Justice in Com. v. McManus, 143 Pa. 64: " If the law applicable to his case is plainly, fully, and accurately stated, he has no cause of complaint though the judge choose to express it in his own words."   If this is the rule in trials for murder, a fortiori it must be the rule in merely civil issues.

In the present case fourteen points were presented by counsel for defendant, most of them sharply drawn and of some intricacy.   The judge formally refused them all, without reading them to the jury, and gave the latter the law applicable to the case as a connected whole in a general charge.   This was entirely within his discretion, and defendant has no cause of complaint if the charge contained nothing erroneous, and omitted nothing favorable to defendant which the points properly called for.

The action was assumpsit for the use of an article obtained by defendant from plaintiff.   The fact that the article was patented, or claimed to be, was entirely immaterial to the case as presented and tried, and bore upon it only incidentally.   No question of the validity of the patent, or of infringement arose.

The undisputed facts were that plaintiff had invented a method of making car-coupler hooks of wrought iron, for which he had obtained a patent, that McConway procured from him the right to make hooks of the kind, and that McConway's firm, and subsequently the McConway & Torley Co., the defendant, did in fact make such hooks from the very patterns and dies procured from plaintiff.   The disputed facts were, whether a price for the use of his invention had been agreed upon by plaintiff and McConway ; and whether the agreement, whatever it was, between McConway and plaintiff, had been adopted by defendant, or by McConway for it with its authority.

Two other points were made in defence, and are assigned for error here : 1, that the hooks made were not such as were

covered by plaintiff's patent, and 2, that the plaintiff declared upon a contract to give McConway the exclusive right to make the hooks, and the evidence did not show that the right was exclusive.

On the case thus outlined the learned judge instructed the jury specifically that plaintiff must prove a contract as the basis of the action, explaining that a suit for infringement was not within the jurisdiction of the court; that he must further prove an adoption of the contract by defendant, and an agreement as to the royalty, or the value of it on quantum valebat. Without going over it in detail it is sufficient to say that there was evidence to justify the jury in finding all these points in plaintiff's favor, and the law in relation to them was clearly and correctly laid down for their guidance.

Upon the point that the article made by defendant was not the same as the article covered by the patent, the learned judge instructed the jury that if the articles were substantially alike in form and made under the assumption that they were made under the patent, or under the permission obtained from the plaintiff, it would be sufficient. This was quite as favorable to the defendant as it was entitled to ask. Whether the patent was followed strictly or not was entirely immaterial. Plaintiff claims that the modification was devised by himself and merely consisted in making the die in two pieces instead of three; and the evidence is indisputable that the article defendant did make was made upon the plans, under the instruction, and with the identical dies that were got from the plaintiff. Whether it was the thing patented or not, it was the thing defendant procured from plaintiff and agreed to pay for. An unpatented article, though of a kind that would entitle it to a patent, may nevertheless be the subject of purchase. So long as the inventor holds the secret in his own possession, and a fortiori when he has the model or die as plaintiff had here, it is property, or a thing of value for the transfer of which he may demand a price, and if he passes it over to a purchaser on an agreement to pay, it is no defence to the latter to say that there is no patent. The learned judge was therefore entirely right, even without calling in the aid of the principle enforced in Hubbard v. Allen, 123 Pa. 198, that the licensee is liable for the stipulated royalty if he uses any part of the invention, which clearly covers the present case.

The only remaining point to be noticed is the variance between the contract declared upon for an exclusive use of the invention, and that shown by the evidence. This is not a good ground for reversal under the circumstances. The evidence was admitted without objection ; no surprise was alleged, nor was any request made for the withdrawal of a juror and continuance. Nor was there any question of fraudulent representations,.or of failure of consideration. Had the defendant admitted a contract for exclusive use and defended on the ground that the use had not been exclusive, and thereby loss had accrued or the agreed royalty had been rendered excessive, the variance would have become material, but nothing of this kind was alleged. The defence was a denial in toto of any contract at all. The case was tried on its merits on that issue, and defendant having taken its chance of a verdict cannot now be allowed to profit by the variance.

The motion to amend is allowed, and thereupon judgment affirmed.