## Palmer, Appellant, *v.* Gilmore, Garnishee.

*Foreign attachment—Collateral impeachment of judgment for fraud.*

Plaintiff having issued a foreign attachment in C. P. No. 1, of Philadelphia, against a debt represented by a judgment in C. P. No 2, the defendant in C. P. No. 2 (garnishee in C. P. No. 1) took a rule to open the judgment, which was resisted by an attaching creditor of plaintiff therein. The claim of this attaching creditor having been paid and his opposition withdrawn, the judgment was opened, the case tried before a jury and a verdict rendered for defendant. The defendant then, as garnishee in C. P. No. 1, pleaded nulla bona. The case was then tried, the issue being the determination of whether or not the trial in C. P. No. 2 was collusive and fraudulent and the verdict obtained by a combination between plaintiff and defendant. It was

*Held :* 1. That the judgment note entered in C. P. No. 2 would have made a prima facie case for this plaintiff against the garnishee had it not been neutralized by the verdict upon it for defendant.

2. If the jury in the present case should be satisfied that that verdict was collusive and fraudulent against the present plaintiff as an attaching creditor, then the verdict would be a nullity as to her, and this case would stand as it stood on the opened judgment in C. P. No. 2, to wit, a prima facie case for the plaintiff made out by the note, and the burden on the defendant to show that there was nothing really due.

*Fraud and collusion—Evidence—Question for jury.*

Where a judgment has been attached by a suit in foreign attachment, and subsequently the judgment is opened, an attaching creditor who opposed this action being paid the amount of his claim, and a verdict and judgment is obtained for the defendant, there being, besides, direct testimony that

this was in pursuance of a fraudulent agreement between plaintiff and defendant, a case is made out which, if uncontradicted or unexplained, would justify the jury in finding that there was collusion and fraud. The circumstances may be susceptible of clear and satisfactory explanation, but such explanation is for the jury.

*Conspiracy—Fraud—Evidence.*

Ground having been laid for the claim of fraudulent combination between two parties, the declarations of either in reference to the subject-matter of the combination become competent evidence. Lowe v. Dalrymple, 117 Pa. 564, followed.

Argued Jan. 26, 1892. Appeal, No. 35, Jan. T., 1891, by plaintiff, Lydia P. Palmer, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1892, No. 15, refusing to take off nonsuit in an attachment against William J. Gilmore as garnishee of Ransom Rogers. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Foreign attachment.

On the trial before BREGY, J., the evidence was to the following effect:

June 26, 1875, Ransom Rogers entered up a judgment note of William J. Gilmore for $5,381.21 in C. P. 2 of Philadelphia; execution was issued and returned nulla bona. There was evidence that Gilmore was insolvent, and continued so until about 1882, when he began to make money. In 1879 Rogers became a fugitive from justice, and thereafter never returned to Philadelphia. In December, 1881, Reeve L. Knight having obtained a judgment against Rogers issued an attachment sur judgment, and attached in the hands of Gilmore the debt due by him to Rogers and represented by the judgment in C. P. 2. In September, 1882, plaintiff, a judgment creditor of Rogers issued this foreign attachment in C. P. 1, attaching the same judgment. And in October, 1882, a third judgment creditor of Rogers issued an attachment sur judgment upon the same judgment.

In the fall of 1882, Gilmore applied to C. P. 2 to open the judgment in Rogers v. Gilmore. The attaching creditors petitioned for leave to oppose the motion. This was granted to Knight, who had obtained judgment against Gilmore as garnishee, and denied the other attaching creditors. Gilmore then paid Knight's judgment, and subsequently C. P. 2 opened the judgment of Rogers v. Gilmore. A jury was called, and

counsel who had entered an appearance for Rogers put in evidence the judgment note of 1875, at the same time stating that he was instructed by Rogers to say that there was nothing due on it. Gilmore was called in defence, and testified that the note was given as security, and nothing was due thereon. The jury found a verdict for defendant.

The issue between this plaintiff and Gilmore, garnishee, was tried May 11, 1891. Plaintiff made the following offer :

" Mr. Waln : I will offer at this point the record and docket entries in the case of Reeve L. Knight v. Ransom Rogers, Gilmore, garnishee, No. 300, June term, 1876, C. P. No. 4 ; I also offer in evidence record and docket entries in Lathrop, Administratrix, v. Ransom Rogers, William J. Gilmore, garnishee, C. P. No. 4, September term 1870, No. 1919 ; also records and docket entries in Palmer v. Rogers, Gilmore, garnishee, C. P. No. 1, Dec. term, 1882, No. 15, for the purpose of showing that before judgment was opened in the case of Rogers v. Gilmore attachment executions issued in these cases, and the debt on the judgment of Rogers v. Gilmore was attached in the hands of Gilmore, and to show a motive for a combination by Rogers and Gilmore to open judgment of Rogers v. Gilmore ; the judgments exceeding the debt due by Gilmore in Rogers v. Gilmore ; to be followed by evidence of a combination by Rogers and Gilmore to defraud the plaintiff and the other attaching creditors. (Objected to.)

" The Court : I sustain the objection to the record evidence in the two attachment suits. The record in the case of Rogers v. Gilmore, and records in the case of Palmer v. Gilmore, garnishee, are admitted. Those in the case of Reeve L. Knight and the other, Lathrop v. Rogers, Gilmore, garnishee, are excluded.

" (Exception granted to plaintiff.) " [3]

Gilmore, being called as for cross-examination, and examined as to affidavits made by him in the attachment suits, his testimony varied in many particulars from the allegations contained therein.

William Gallagher testified that he had been a partner of Gilmore in 1882 ; that Gilmore told him he was going to Virginia to see Rogers ; that he went away and returned saying he had seen him.

" The Court:

" Q. You say he saw Rogers, and you talked to Gilmore about this business?

" A. When he came back, I asked Gilmore how he made out; of course I was anxious to know how he made out, being his partner; and he said he had made out well, that he had seen him, and brought him up, and telegraphed Kneass to secure counsel for him—to secure Hopple as his counsel, and that Rogers met them at the Pa. R. R. station—Mr. Rogers did not get off the train at all, but went on towards New York, and Mr. Hopple was to get Mr. Rogers' story, so he could represent him in the case—whether he went to New York or Trenton I do not know."

The witness was asked.

" Q. If you know, tell me who paid the attorney's fee for Rogers?

" (Objected to. Objection sustained. Exception by plaintiff.) " [7]

David B. Taylor having identified a letter as from Ransom Rogers, the letter was offered in evidence. (Objected to. Objection sustained. Exception to plaintiff.) [1]  The letter was given in the assignment of error as follows :

" R. ROGERS,
                       LAW AND REAL ESTATE OFFICE,
                           Bryant Block, 89 Randolph Street,
Rooms 7 and 8.
                       CHICAGO, Ill., December 5, 1881.

D. B. TAYLOR, ESQ.                  ·
Dear Sir :

In answer to your favor of the third instant, which has just come to hand, I will say, I thank you for the interest you take in my behalf, and shall consider the arrangements you propose for me to make with regard to the judgment versus Gilmore. I think, however, to give one half would be too liberal fee in a case like this. There are no expenses to be incurred; the judgment is obtained all ready, and, if I remember correctly, on a judgment note with a waiver, all there is to be done is to find property in his possession, belonging to, or money coming to him, then issue an execution and attach it and the three hundred dollar law exemption being waived can always make

the expenses of the proceedings out of the defendant, if no more. It may be that I know your friend Mr. Thackara; but I can't call him to mind at this time. Will you be good enough, therefore, to inform me, is he a lawyer, or what is his business? Would you also be good enough to inform me of the nature and character of his claim against Gilmore, whether upon open account or what is its condition? Knowing all these things I can form a better opinion as to what proposition to make your friend.

Are you still engaged in the wholesale liquor trade? and if so have you any trade in this city or any western trade, or any one to sell for you out here?

Trusting I may hear from you soon, I remain

Very truly yours, etc.,

R. ROGERS.

P. S.—I will add that Mr. G. is largely in my debt over and above the judgment referred to, but this is on an open and unsettled account, and a liability incurred subsequently to the settlement had, out of which the judgment referred to grew. But I do not feel inclined to bother with this at present, and yet I presume it will have to be attended to ere long, lest it be barred by limitation.

R."

Plaintiff being called as a witness—

"Mr. Waln: I offer to prove that Ransom Rogers told the plaintiff at her house about 1876 that Gilmore was justly indebted to him, Rogers, to the amount of this judgment note, and also considerably more money to the amount of several thousand dollars over and above this judgment note.

"(Offer overruled, exception to plaintiff.) " [2]

At the conclusion of plaintiff's testimony the court entered a nonsuit. A motion to take it off was subsequently dismissed by the court. Plaintiff appealed.

*Errors assigned* were refusal to admit (1) letter of Rogers, quoting it; (2) offer of plaintiff to prove that Rogers told her Gilmore was indebted to him, quoting offer; (3) records and docket entries in the attachment suits; (4) not submitting plaintiff's evidence to the jury; (5) entering nonsuit; (6) refusal to take it off; (7) refusal of plaintiff's question to witness Gallagher, quoting it.

*John G. Johnson,* with him *John S. Freeman, S. Morris Waln* and *John F. Keator,* for appellant.—If the statement by the plaintiff, Rogers, through his counsel, Mr. Hopple, and the testimony of Gilmore at the trial in C. P. 2 were both totally false, and the result of a fraudulent combination to destroy the evidence of Gilmore's indebtedness, after the attachments by Rogers' creditors were laid, then the judgment is, as to plaintiff, void, and may be attacked collaterally: Dougherty's Estate, 9 W. & S. 196; Clark v. Douglass, 62 Pa. 415; Braddee v. Brownfield, 4 Watts, 474; Church v. Wood, 61 Pa. 96; 1 Tr. & H. Practice, sec. 808.

Plaintiff having shown facts tending to show a fraudulent combination the declarations of either party are competent: Lowe v. Dalrymple, 117 Pa. 568; Gibbs v. Neely, 7 W. 307; Deakers v. Temple, 41 Pa. 234; Rogers v. Hall, 4 W. 359; Confer v. McNeal, 74 Pa. 112; Brinks v. Heise, 84 Pa. 246; Bredin v. Bredin, 3 Pa. 81; Mackinley v. McGregor, 3 Whart. 397; McDowell v. Rissell, 37 Pa. 164; Kenyon v. Ashbridge, 35 Pa. 161; Crawford v. Ritter, 1 Penny. 29.

The evidence of fraud was sufficient to have gone to the jury.

*Richard P. White, Thomas Diehl* with him, for appellee.— That plaintiff and defendant in the original judgment had a right to open and even to set aside a judgment upon which there was nothing due is too plain for argument, and the very point was ruled in Corson v. McAfee, 44 Pa. 290; see also Good v. Grant, 76 Pa. 52.

It is to be noted that there was no offer to show (1) that the court (C. P. 2) was deceived or misled; (2) that any pretence of contest was made, or that the fact that plaintiff and defendant were acting in concert was concealed; (3) that deception of any kind was used.

OPINION BY MR. JUSTICE MITCHELL, March 28, 1892:

The judgment note from Gilmore to Rogers imported a debt due, and would have made a prima facie case for this plaintiff against the garnishee, had it not been neutralized by the verdict upon it for defendant in the suit in C. P. No. 2. But if the jury should be satisfied that that verdict was collusive and fraudulent against this present plaintiff as an attaching cred-

itor, then the verdict would be a nullity as to her, and the case would stand here, as it stood on the opened judgment in C. P. No. 2, with a prima facie case for the plaintiff made out by the note, and the burden on the defendant to show that there was nothing really due.    The effect on the present issue would be simply to take the verdict out of the way and leave the case as if it had never been rendered.

The first point to be considered therefore is, whether the plaintiff presented sufficient evidence to go to the jury on the collusive and fraudulent character of the verdict in C. P. No. 2, and we are of the opinion that she did.    The variations, not to call them discrepancies, between the testimony of Gilmore on the stand, and his previous affidavits in the suits of Rogers v. Gilmore and Knight v. Rogers, the peculiar circumstances of the trial in C. P. No. 2, the attachments furnishing a motive for a collusive arrangement between Rogers and Gilmore, the payment to Knight the only attaching creditor who stood in the immediate way of an arrangement, and the testimony of Gallagher which if believed pointed clearly to the existence of such arrangement, made out a case which if uncontradicted or unexplained would justify the jury in finding that there was collusion and fraud.  It may all be susceptible of clear and satisfactory explanation, and, if so, the verdict in C. P. No. 2 will be conclusive even against the present plaintiff that there is nothing due from Gilmore to Rogers on the note in question. But such explanation is for the jury.

Ground having been laid for the claim of fraudulent combination between Rogers and Gilmore, the declarations of either, in reference to the debt, become competent evidence': Lowe v. Dalrymple, 117 Pa. 564.

Judgment reversed, and venire de novo awarded.