## Sommer, Appellant, *v.* Gilmore, Garnishee of Rogers.

160 ——— 129
30 SC ²168

*Attachment execution—Fraud—Evidence—Declarations.*

Where ground has been laid for a claim of fraudulent collusion between a debtor and his judgment creditor to deprive a person, who has attached the debt in the hands of the debtor, of the benefit of his attachment, the declarations, written or verbal, of either debtor or creditor in reference to the debt are competent evidence.

*Practice—Charge—Answer to points.*

Where the general charge fails to cover points, the parties are entitled to a definite answer to the points either in affirmance or refusal.

Argued Jan. 8, 1894.   Appeal, No. 26, July T., 1893, by plaintiff, Andrew Sommer to use of Mary F. Lathrop, admrx. of John Lathrop, deceased, from judgment of C. P. No. 4, Phila. Co., Sept. T., 1870, No. 1919, on verdict for William J. Gilmore, garnishee of Ransom Rogers.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Reversed.

Attachment execution.

At the trial, before ARNOLD, J., it appeared that, in June, 1875, judgment was entered against William J. Gilmore and in favor of Ransom Rogers for $5,381.21 on a judgment note.   In 1888 a rule to open the judgment was made absolute, and on a trial of the issue in C. P. No. 2, a judgment was entered in favor of defendant, Gilmore.   Gilmore there testified that the judgment was given merely to secure to Rogers some property that was in Gilmore's name ; that Gilmore subsequently returned the property but that the judgment was never satisfied.   On Oct. 10, 1882, plaintiff, Sommer, to use, issued this attachment execution against Gilmore, and, at the trial, in 1891, claimed that the verdict obtained in 1888 was secured by collusion between Rogers and Gilmore to defeat the attachment of the debt.

The court, under objection and exception, refused to admit in evidence the following letter :

                                "CHICAGO, Ill., December 5, 1881.
" D. B. TAYLOR, ESQ.

"Dear Sir : In answer to your favor of the third instant, which has just come to hand, I will say, I thank you for the interest you take in my behalf, and shall consider the arrangements you

propose, for me to make with regard to the judgment versus Gilmore. I think, however, to give one half would be too liberal a fee in a case like this. There are no expenses to be incurred; the judgment is obtained all ready, and, if I remember correctly, on a judgment note with a waiver, all there is to be done is to find property in his possession, belonging to, or money coming to him, then issue an execution and attach it, and, the three hundred dollar law exemption being waived, can always make the expenses of the proceedings out of the defendant, if no more. It may be that I know your friend Mr. Thackara; but I can't call him to mind at this time. Will you be good enough, therefore, to inform me, is he a lawyer, or what is his business? Would you also be good enough to inform me of the nature and character of his claim against Gilmore, whether upon open account or what is his condition? Knowing all these things I can form a better opinion as to what proposition to make your friend.

" Are you still engaged in the wholesale liquor trade? and if so have you any trade in this city or any western trade, or any one to sell for you out here?

" Trusting I may hear from you soon, I remain,

" Very truly yours, etc.,

" R. ROGERS.

" P. S.—I will add that Mr. G. is largely in my debt over and above the judgment referred to, but this is on an open and unsettled account, and a liability incurred subsequently to the settlement had, out of which the judgment referred to grew. But I do not feel inclined to bother with this at present, and yet I presume it will have to be attended to ere long, lest it be barred by limitation. R." [1]

The court also refused to admit plaintiff's offer to prove by the witness, Mrs. Palmer, " that Ransom Rogers told witness at her house about 1876 that Gilmore was justly indebted to him (Rogers) to the amount of the said judgment note ($5,381.21), and also considerable more money to the amount of several thousand dollars over and above the said judgment note." [2]

The court charged in part as follows :

" [Sommer says that notwithstanding that trial and that verdict on that judgment some years ago, Gilmore does owe Rogers $15,000 and that he ought to pay Sommer's judgment out of

it; that that judgment, that verdict and that trial (in C. P.
No. 2) was a fraud and sham. I might freely say to you, I do
not see the evidence of it. Do you see any proof of it at all?
Gilmore says that he gave that judgment note as security to
Rogers, for certain property put in Gilmore's name for Rogers's
account, on a theater at Tenth and Callowhill streets, fifteen
or twenty years ago. Rogers, it is said, was a Quaker and did
not want to put it in his own name. That judgment note was
put on record, so that in case Gilmore got into trouble with
other creditors Rogers could come in first and secure his own
by execution on the judgment. Having had the benefit of that
security, having accomplished its purpose, the case went to
the jury and there was a verdict for the defendant.] [3]

" [We have had volumes and volumes of books and papers,
and speeches and speeches without end, and it is to be hoped
that you will be able to find out from those books and papers
and speeches whether that trial was a sham or not.] [4] Upon
no other theory whatever can any verdict be found in this case.
If you believe the trial in Court of Common Pleas No. 2 was a
fair trial—both sides being represented by lawyers, as the rec-
ord shows, and witnesses heard, and a judge charging the jury
—if you believe that was a bona fide trial of the case, that ends
this case. If you believe it was a sham—[if you believe the
case tried before twelve jurymen, two lawyers and a judge was
a sham, a bugaboo to frighten people, and if you believe also
that Mr. Gilmore does owe that money, then you can find a ver-
dict against him in this case.] [5] If you do find that, you
will find how much he owes. Their original judgment was
about $5,300; he has paid out some money for Rogers, $1,300, I
believe, which is to be deducted. He is liable, if at all, for the
difference, $4,000 and interest for fifteen years, notwithstanding
he has a judgment in his favor in another court. If you find
that Gilmore owes Rogers, notwithstanding that verdict and
judgment that he does not, then you may say how much you
find Gilmore owes Rogers, and I will put it on the record, and
out of that Sommer will get payment of his judgment."

Plaintiff presented the following points, which the court did
not answer:

" 1. If the jury find that the trial in Common Pleas No. 2,
November 12, 1888, in case Rogers v. Gilmore, on the judg-

ment note of $5,381.21 executed by Gilmore in favor of Rogers, was a sham trial, and that the verdict therein was obtained by a combination between said Rogers and Gilmore for the purpose of defrauding the plaintiff and the other creditors who had previously attached the debt due on the said judgment in the said case of Rogers v. Gilmore, then the verdict in favor of Gilmore in said case, is null and void as to this plaintiff, and she is entitled to recover, notwithstanding said verdict.

" 2. The entire series of acts and declarations made by either Rogers or Gilmore in reference to the consideration of the said judgment note of $5,381.21, before and after the plaintiff and the other creditors attached said judgment, are to be considered together for the purpose of determining whether or not the testimony of Gilmore—the only witness—at the trial in Rogers v. Gilmore, as to the consideration of said note of $5,381.21, and the statements made by Rogers, or by his directions, at said trial, as to the consideration of said note, were false and known to them to be false at the time, and made by them, the said Rogers and Gilmore, to carry out a combination to defraud the plaintiff and the other attaching creditors.

" 3. If the jury finds that the evidence shows or tends to show that there was a combination between Rogers and Gilmore to open the judgment in the case of Rogers v. Gilmore, and obtain a verdict in favor of Gilmore on said judgment note of $5,381.21, on the ground that said note was given without consideration, for the purpose of defrauding the plaintiff and the other attaching creditors, then all the acts, declarations, letters and admissions of either Rogers or Gilmore which show and tend to show that Gilmore was at the time the attachment was served on him in this case justly indebted to Rogers, and that said note was given for a just debt, and was justly due, and that the said trial was a sham trial, are evidence to bind the other party to that sham trial, although not made in his presence.

" 4. If the jury find that Gilmore was indebted to Rogers on the said note $5,381.21 at the time it was attached by plaintiff in the hands of Gilmore, then the plaintiff in this case is entitled to a verdict against Gilmore for the amount of her judgment against Rogers and interest, the debt due by Gilmore to Rogers being larger in amount than the debt due by Rogers to the plaintiff."

Verdict and judgment for garnishee.    Plaintiff appealed.

*Errors assigned* were (1, 2) rulings on evidence; (3–5) portions of charge; (6) failure to answer points; quoting rulings and evidence and portions of charge in brackets.

*J. S. Freeman* and *S. Morris Waln, John F. Keator* with them, for appellant, cited: Palmer v. Gilmore, 148 Pa. 48; Lowe v. Dalrymple, 117 Pa. 564.

*James H. Shakespeare,* for appellee, filed no paper-book.

OPINION BY Mr. JUSTICE MITCHELL, March 5, 1894:

This case grows out of the same transactions, and raises the same questions as Palmer v. Gilmore, 148 Pa. 48, and the evidence offered on the part of plaintiff was admissible for the reasons there given.    The defence, or one of the defences of Gilmore to the note given by him to Rogers was that it never represented a real debt.    The letter of Rogers to Taylor and the offer of the testimony of Mrs. Palmer tended to prove the contrary, and ground having been laid for the claim of fraudulent combination between Gilmore and Rogers to deprive plaintiff of the benefit of his attachment, the declarations, written or verbal, of either, in reference to the debt became competent evidence.

The plaintiff presented four points of which no notice was taken, and we cannot regard the charge as even in substance covering them, even if it were otherwise a fair and judicial presentation of the case.    They were entitled to a definite answer either in affirmance or refusal.

Judgment reversed and venire de novo awarded.