# Schomacker Piano Forte Manufacturing Company v. Yankee Dauntless Club, Appellant.

*Practice, C. P.—Trial—Instructions—Points for charge.*

A party is entitled to a clear and distinct statement of the law in answer to every point properly drawn that is material and applicable to the case, and warranted by the facts and the evidence, if not fully covered in the general charge.

Argued Oct. 4, 1905. Appeal, No. 241, Oct. T., 1904, by defendant, from judgment of C. P. No. 3, Phila. Co., Dec. T., 1899, No. 800, on verdict for plaintiff in case of Schomacker Piano Forte Manufacturing Company v. Yankee Dauntless Club. Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Assumpsit for the price of a piano. Before FINLETTER, P. J.

The court charged in part as follows:

The plaintiff claims to recover in this case $324 for goods sold and delivered. I may say, at the outset, that unless you are satisfied from all the testimony in the case that there was a purchase and sale, the plaintiff cannot recover. So that [this comes down simply to what occurred at the time the whole of the committee were at the plaintiff's store.] [11] From the testimony in relation to what occurred then you must be satisfied that the committee agreed to purchase the piano and that the plaintiff agreed to sell it. There is no question about the delivery, because the piano was delivered. Everything that has been said in this case is evidence and important only so far as it calls the attention of the jury to what occurred at that particular time and to what was the result of the interview be-

tween the committee and the president of the plaintiff company. If the papers in evidence do not tend to explain that, they are useless as evidence in this case, because, as I have said, [the whole of this case depends upon what occurred at the particular time that the committee were there and discussed this matter.] [12] Of course, any evidence that has a bearing upon these two questions—the question of purchase and the question of sale—I say any evidence in this case that bears upon that is proper for consideration of the jury.

The jury will understand, however, that as the defendant is a corporation, it cannot in any event be made responsible for what any of its members has done in relation to this matter. But [it is admitted that the committee had authority and were appointed by the defendant to make this particular purchase], [13] and therefore there can be no question of the liability of the defendant corporation, if the jury are satisfied that there was a purchase and a sale and a delivery.

Defendant presented these points:

1. The defendant being a chartered corporation, and sued as such, could not be bound by a contract made, or attempted to be made, by any individual thereof, although in the name of such corporation, unless by a resolution of its board of directors or other proper authority he had been directed to act in that behalf; but no such agency could be inferred. *Answer:* Declined. [1]

2. Mere negotiations, with a view to enter into a contract of sale, taking bids, setting aside an article for future consideration or more mature deliberation, do not create an obligation of contract to purchase such article. *Answer:* Declined. [2]

3. The letter of January 8, 1900, reading as follows:

" PHILADELPHIA, January 8, 1900.
" MR. JAMES A. ROBB:
" Dear Sir: The piano committee will meet on Monday next, January 15, at nine o'clock sharp, at Sigel's, Seventh and Moore streets, to proceed uptown to do the purchasing act. Now, Uncle Jim; please do me the favor to be on hand and go with us. If you can't go down to Sigel's, meet us Eleventh and Chestnut at 9:30. You know this is no trifling matter,

and I would be pleased if I could get the full committee to serve. Please do this for me, Jim. Yours,

"W. H. MELVIN."

addressed by one of a committee consisting of five persons, members of the corporation, to another member thereof, could not be construed as delegating the authority vested in the entire committee to the individual addressed, but rather by its express terms and language negatives the idea of any such delegated authority. *Answer :* Declined. [3]

4. Where a corporation delegates to a committee consisting of several members thereof power and authority to make a contract for the corporation, the corporation cannot be held unless at least a majority of such committee concurs in the making of said contract. *Answer :* Declined. [4]

5. If the jury believe from the evidence that a majority of the committee to whom was delegated the authority to purchase a piano for the defendant corporation, repudiated the alleged contract sought to be established in the case as the contract of Mr. Robb, upon the part of the corporation before the piano was delivered, or after its delivery, then there was no contract binding the corporation, and there can be no recovery. *Answer :* Declined. [5]

6. If the jury believe from the evidence that the action of one member of the piano committee of five was not adopted and ratified by that committee or by the corporation defendant, then the plaintiff is not entitled to recover. *Answer :* Declined. [6]

7. If the jury find from the evidence that the plaintiff proved by its witness Gray that it delivered the piano to the defendant corporation solely upon the responsibility of Mr. Robb, and that Mr. Robb was not individually authorized to contract for the defendant corporation, but was one of a committee of five of said defendant corporation, and had no authority to act except through said committee ; such being the evidence, the plaintiff is not entitled to recover in this action, and the verdict must be for the defendant. *Answer :* Declined. [7]

8. Plaintiff itself having proven that the agency was in the committee, it became the duty of the plaintiff before it acted to ascertain whether or not a majority of the committee con-

curred in the action of Mr. Robb, and if the jury find that the plaintiff knew that the committee did not so concur, the verdict must be for the defendant. *Answer :* Declined. [8]

9. That under all the evidence in the case the verdict must be for the defendant. *Answer :* Declined. [9]

Verdict and judgment for plaintiff for $324. Defendant appealed.

*Errors assigned* were (1–9, 11, 12–14) above instructions, quoting them ; (10) the charge as a whole, quoting it ; (13) in failing to charge the jury specifically as to the legal effect of the letter dated January 8, 1900.

*Joseph R. Fahy* and *Howard B. Lewis*, for appellants.

*Horn R. Kneass*, for appellee.

OPINION BY RICE, P. J., March 12, 1906 :

The defendant, an incorporated social club, appointed a committee of five to select and purchase a piano. This action of assumpsit was brought to recover the price of a piano alleged to have been purchased by the committee and delivered to the defendant's clubhouse. The matters assigned for error are principally the denial of the defendant's points. The questions in the case will appear upon a brief review of the conflicting testimony.

On December 18, 1899, according to the testimony of Henry W. Gray, the president of the plaintiff company, Mr. Melvin, chairman of the committee, called at the plaintiff's place of business and selected a piano and, having agreed to the price, directed Mr. Gray to hold it until the defendant was ready to have it delivered, whereupon it was tagged and set aside. Later the plaintiff received word that the club was not ready to receive the piano, and that Melvin would bring a few members of the committee or of the club to look at it. On the morning of the day appointed, January 15, 1900, Mr. Robb, a member of the committee, appeared. After waiting some time for the other members, looking at the piano, and expressing satisfaction with it, he said to Gray : " Well, they don't come. They are not here and I am tired of waiting and we will settle this

matter. We want the piano. Send it home." As evidence of his authority Robb showed the letter quoted in the third assignment of error. This was ample notice to the plaintiff that Robb individually did not have authority to bind the defendant. Besides that, being a special agent, and known to be such by the plaintiff, it was incumbent upon the latter to ascertain the scope of his authority. Nevertheless, the piano was put in readiness at once, and was delivered at defendant's clubhouse before the day closed. The foregoing is the plaintiff's version, in substance, of what took place before the piano was delivered. The version given by the defendant's witnesses is, that Robb said to Gray that if he would send the piano to the clubhouse, he, Robb, would pay the cartage back and forth if it was not accepted, and that this was the entire transaction between them.

In the afternoon of the same day the four other members of the committee, Melvin, the chairman, being one of the four, appeared at the plaintiff's place of business. The testimony as to what occurred at this meeting is confused and contradictory. According to the most intelligible testimony on the part of the plaintiff, they were informed by Mr. Gray that the piano that had been selected, had been sent to the clubhouse, but he could show them one like it; he did so, and " they said they liked the piano and were very much pleased, and it was all right." On the other hand, the defendant's witnesses testified, that Gray first said Robb had bought the piano and it had been delivered; that afterwards he corrected himself and said it was on the elevator, and had it brought back and exhibited to them; that Melvin then said: " As long as it has not been delivered, don't you deliver it until we have a consultation. We want to spend this money judiciously;" that the four members of the committee went out, and after consultation he returned and told Gray that they had decided not to take the piano.

Under any view of the evidence it is plain that Robb individually had no authority to buy the piano and bind the defendant for the price, and, therefore, in the transaction in which he participated, no obligation on the part of the defendant to take and pay for it was created. It is equally plain, if the testimony of the defendant's witnesses be accepted, that no such obligation was created by what was said and done in the after-

noon, when the four members of the committee were present. And even if the testimony of the plaintiff's witnesses as to that interview be accepted, it would not, standing alone, establish a contract of sale complete in all its terms, including price.    However, bearing in mind that it was the province of the jury to determine the credibility of the witnesses and the meaning of the words used in the transaction, we are not prepared to say that a finding by the jury that the four members of the committee approved and ratified the previous action of Robb would have been wholly unwarranted.    Therefore, it was not a case for binding instructions in favor of the defendant.    Nevertheless, it was important for the jury to determine what Robb had done, and what representations were made to the committee as to what he had done.    For if the jury found that he had simply ordered the piano to be sent to the clubhouse on approval, and that the plaintiff untruly represented that he had bought outright the piano exhibited to his fellow committeemen in the afternoon, thus conveying the impression to them that he had formed a conclusive judgment upon the question committed to their discretion, this would have had a very important bearing upon the question of the defendant's liability. In short, if the action of these four members of the committee was induced by misrepresentaion of material facts on the part of the plaintiff, and was promptly disaffirmed, the defendant would not be bound.

The defendant's first point for charge, treating it as a statement of an abstract proposition was too broad.    The fifth ignored the evidence tending to show that the majority of the committee at first approved the action of Robb.    The seventh was so worded as, in effect, to be a request for binding instructions.    It may not have been so intended, but a jury might have so understood it.    The ninth was an explicit request for binding instructions.    The court was right in refusing all of these points.    But it will be seen from the foregoing recital and analysis of the testimony that the other points submitted by the defendant embodied, or called for the application of legal principles pertinent to the case.    No reason has been assigned for declining them except that they were sufficiently answered in the general charge.    We recognize the rule that an appellant " has no cause of complaint if the charge con-

tained nothing erroneous and omitted nothing favorable to him which the points properly called for: " Kroegher v. McConway & Sorley Co., 149 Pa. 444; Carey v. Buckley, 192 Pa. 276. But we cannot agree that the case was brought within the rule by the instructions in the general charge to the effect that the whole case depended upon what occurred at the time the whole of the committee were at the store and discussed the matter. Of course, the broad question was whether what was said and done on the afternoon of January 15, when four members of the committee were present, was the consummation of a valid purchase and sale of the piano, but this was so intimately connected with what had preceded that the distinct affirmation of the defendant's points last referred to would have aided the jury in arriving at a correct conclusion upon that question. There was other testimony, which we have not alluded to, which made it pertinent and proper that the jury should be instructed with regard to the matters referred to in these points. The rule is that a party is entitled to a clear and distinct statement of the law in answer to every point properly drawn that is material and applicable to the case, and warranted by the facts and the evidence, if not fully covered in the general charge : Sommer v. Gilmore, 160 Pa. 129 ; Whitmire v. Montgomery, 165 Pa. 253 ; Jones v. Greenfield, 25 Pa. Superior Ct. 315. Applying this rule we are constrained to hold that the case must be sent back for retrial.

The thirteenth assignment is a substantial reiteration of the third and is dismissed for that reason. The first, fifth, seventh and ninth are overruled for the reasons already suggested. The fourteenth is an excessively fastidious criticism of a single sentence of the charge and is without merit. The other assignments are sustained.

Judgment reversed and venire facias de novo awarded.